**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MELVYN JARAMILLO; DEBBIE
JARAMILLO, for themselves and others
similarly situated,

        Plaintiffs-Appellants,

v.

GOVERNMENT EMPLOYEES
INSURANCE COMPANY; GEICO
GENERAL INSURANCE COMPANY;
GEICO INDEMNITY COMPANY;
GEICO CASUALTY COMPANY,

        Defendants-Appellees.

No. 12-2108
(D.C. No. 6:10-CV-01095-JCH-LFG)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **HOLLOWAY**,[**] and **HOLMES**, Circuit Judges.

---

[*]     This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[**]     The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, heard oral argument and participated in the panel's conference for this appeal, but passed away prior to final disposition. Judge Holloway did not cast a vote regarding this order and judgment, and he had no role in its preparation. "The practice of this Court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." *United States v. Sharp*, 749 F.3d 1267, 1270 n.* (10th Cir. 2014) (internal quotation marks omitted); *see also* 28 U.S.C. § 46(d) (noting that a circuit court may adopt procedures permitting the resolution of an appeal where a remaining quorum of a panel agrees on the disposition). The remaining panel members have acted as a quorum

(continued...)

Melvyn and Debbie Jaramillo filed a class-action complaint against Government Employees Insurance Company, GEICO General Insurance Company, GEICO Indemnity Company, and GEICO Casualty Company (collectively "GEICO"), bringing claims arising out of a motor vehicle accident. The district court granted summary judgment to GEICO and denied the Jaramillos' subsequent motion to reconsider, and the Jaramillos challenge both rulings on appeal. In addition, the Jaramillos have filed a motion with this court requesting certification of a legal question to the New Mexico Supreme Court.

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the district court's award of summary judgment to GEICO, **affirm** the district court's denial of reconsideration, and **deny** the Jaramillos' motion to certify.

**I**

On March 31, 2009, the Jaramillos purchased an automobile insurance policy ("the Policy") from GEICO. The Policy insured four vehicles owned by the Jaramillos; for each vehicle, it provided bodily-injury liability coverage with limits of $50,000 per person and $100,000 per occurrence (alternatively styled "$50,000/$100,000"), and property-damage coverage with a limit of $50,000. As initially issued, the Policy also supplied uninsured/underinsured motorist ("UM/UIM") coverage. That version of the

---

**(...continued)
with respect to this order and judgment and, for the reasons stated below, vote to **affirm** the judgment of the district court in all respects and **deny** the Jaramillos' motion to certify a question of law to the New Mexico Supreme Court.

2

Policy provided UM/UIM bodily-injury coverage limits of $25,000 per person and $50,000 per occurrence on each vehicle.[1]

Also on March 31, 2009, in connection with the Jaramillos' purchase of the Policy, GEICO sent the Jaramillos a "new business packet" including, *inter alia*, a copy of the Policy, endorsement declarations, and a blank New Mexico UM/UIM Coverage Information and Selection Form (the "Option Form"). On April 21, 2009, GEICO received a returned copy of the Option Form containing the printed name "Debbie Jaramillo" and the signature "D. Jaramillo." Aplt. App. at 192 (Option Form, filed Feb. 21, 2011). Although that document is not dated, the envelope in which the Jaramillos mailed it bears a stamp indicating transmittal from Albuquerque, New Mexico on April 4, 2009. *See id.* at 193.

The first page of the Option Form reads, "I have had [UM/UIM] Coverage

---

[1]     In a ruling postdating the issuance of the original Policy, the New Mexico Supreme Court held that a vehicle insurance policy may not contain UM/UIM limits *lower* than bodily-injury limits in the absence of the policyholder's written rejection of such UM/UIM coverage. *See Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1214 (N.M. 2010) (expressly stating that New Mexico's motor vehicle laws "require[] an insurer to offer UM/UIM coverage in an amount equal to the liability limits of the policy and that the choice of the insured to purchase any lower amount functions as a rejection of that maximum amount of coverage statutorily possible"). It is undisputed that the Jaramillos did not submit to GEICO a written rejection of the Policy's initial UM/UIM limits; as a result, the Policy as initially written *would* have been invalid under *Weed Warrior*. But *Weed Warrior* does not materially alter our analysis or our ultimate decision to affirm the judgment of the district court. This is so because the issue presented in this appeal is whether the Jaramillos' *subsequent* written rejection of all UM/UIM coverage passed muster under New Mexico law—not whether the Policy's *initial* UM/UIM coverage limits would have been legally sufficient.

3

explained to me and I fully understand it," and continues:

> I also understand that my [UM/UIM] Coverage election applies to this policy and all vehicles insured under this policy until I notify [GEICO], in writing, that I wish to change my election. My [UM/UIM] Coverage election shall apply to any renewal, reinstatement, substitute, amended, altered, modified, or replaced policy with this company or any affiliated Government Employees Insurance Company. If a box is not checked, I understand that UM/UIM Bodily Injury Coverage will be issued with limits equal to the Bodily Injury Liability Limits of my policy and my UM Property Damage Coverage will be issued with limits of $10,000 each accident.
>
> Any change to my [UM/UIM] Coverage election shall be effective as of the date of the written notification being received and shall apply to all vehicles currently on the policy and to all vehicles added to the policy in the future.

*Id.* at 191.

Beneath these statements are two boxes corresponding to the insured's choice regarding UM/UIM coverage. Next to the first box is the option to reject UM/UIM coverage, which is presented as follows:

> I reject UM/UIM Bodily Injury Coverage and UM Property Damage Coverage. I have been offered [UM/UIM] Coverage up to an amount equal to the limits of liability coverage and I reject the option to purchase any [UM/UIM] Coverage. I understand that New Mexico law requires [GEICO] to include [UM/UIM] Coverage with each policy of automobile insurance sold in New Mexico. I understand that UM/UIM provides insurance for losses which I may incur if I am injured by a person who is not insured or who does not have enough insurance to compensate me for my injury. I understand that New Mexico law allows me to decide whether I want to keep the UM/UIM Coverage on my insurance policy. Based on my understanding, I choose to decline UM/UIM Coverage. I understand that until I inform [GEICO] in writing that I wish to add UM/UIM Coverage to my insurance policy, no automobile insurance policy issued to me by [GEICO] will provide coverage if I am injured or my property is damaged by an uninsured or

4

underinsured motorist.

*Id.* The Option Form signed and returned by the Jaramillos contains a checkmark in the box beside the foregoing language.

The second box on the Option Form—left blank on the version returned by the Jaramillos—accompanies the option to select UM/UIM coverage. This option states:

> I select UM/UIM Bodily Injury Coverage and UM Property Damage Coverage for the following limits which are equal to or lower than my selected Bodily Injury Liability Limits (limits higher than the Bodily Injury Liability Limits may not be selected). I have also selected my option for UM Property Damage Coverage and understand that this coverage cannot be purchased without UM/UIM Bodily Injury Coverage.

*Id.*

The second page of the Option Form, which bears Ms. Jaramillo's signature, notes at the top that the Jaramillos' "bodily injury liability coverage limit is: $50,000/$100,000." *Id.* at 192 (capitalization altered). It then itemizes several options for UM/UIM coverage that may be purchased: eleven different UM/UIM bodily-injury coverage limits, and six different UM property-damage coverage limits. In detailing these potential coverage choices, the Option Form indicates the premium that would be assessed for each option for each of the Jaramillos' four vehicles. None of the boxes corresponding to any UM/UIM selections have been checked on the Jaramillos' returned Option Form.

"After receiving the signed Option Form" on April 21, 2009, "GEICO deleted the UM/UIM coverage initially selected by the Jaramillos . . . and refunded the prorated

5

UM/UIM premium of $163.23." *Id.* at 304 (Mem. Op. & Order on Summ. J., filed Sept. 14, 2011). On April 22, 2009, GEICO issued a new Policy packet to the Jaramillos that contained a revised set of endorsement declarations. A section of the packet labeled "Important Messages" notifies the recipient that "[c]overages and/or limits were changed *as you requested* or due to state requirements." *Id.* at 199 (Family Auto. Pol'y Endorsement Decls., issued Apr. 22, 2009) (emphasis added) (capitalization altered). The next two pages set forth the Policy's updated coverage limits and associated premiums for all four insured vehicles—including the notation "INSURED REJECTS" in the sections corresponding to UM/UIM coverage limits. *Id.* at 200–01. In addition, both pages advise the insureds that "[c]overage applies where a premium or 0.00 is shown for the vehicle." *Id.* For each vehicle, the document displays a blank space in the premium section for UM/UIM coverage, as opposed to a dollar amount or "0.00." The revised Policy packet also included a blank Option Form listing the same coverage options and premiums as the version of the Option Form signed by Ms. Jaramillo—presumably for the Jaramillos' use if they chose to reconsider their rejection of UM/UIM coverage.

On July 11, 2009, while driving one of his insured vehicles, Mr. Jaramillo was involved in an automobile accident. He sustained serious injuries, spent several days in the hospital, and "incurred more than $200,000 in medical costs." Aplt. Opening Br. at 7. Because the operator of the other vehicle involved in the accident—who was apparently at fault—was an underinsured motorist, the Jaramillos sought UM/UIM benefits. When they did, GEICO refused to pay the claim, reasoning that the Jaramillos had expressly

6

rejected UM/UIM coverage. *See* Aplt. App. at 176 (Decl. of Ruben Garay, filed Feb. 21, 2011) (stating GEICO's view that on the date of the accident, "the Jaramillo Policy did not provide UM/UIM Bodily Injury coverage or UM/UIM Property Damage coverage as to any vehicle on the Jaramillo Policy").

After GEICO denied their claim, the Jaramillos filed suit in New Mexico state court. Their complaint, styled as a putative class action, stated eight[2] causes of action related to GEICO's refusal to pay UM/UIM benefits: (1) violation of New Mexico's Unfair Trade Practices Act; (2) violation of New Mexico's Trade Practices and Frauds Act and its insurance code; (3) a claim for UM/UIM benefits; (4) breach of the implied covenant of good faith and fair dealing; (5) breach of contract; (6) a request for injunctive relief;[3] (7) a request for a declaratory judgment articulating their rights under the Policy; and (8) a request for punitive damages. GEICO timely removed the matter to federal court under the Class Action Fairness Act, *see* 28 U.S.C. § 1441(a); *id.* § 1332(d), and the parties agreed to submit to the district court the legal and factual issues underlying only the Jaramillos' claims before proceeding to address the question of class certification.

---

[2] In total, the complaint advanced thirteen causes of action. Counts Nine through Thirteen pertained to Michael Atencio (the driver of the other vehicle involved in Mr. Jaramillo's accident) and Sarah Peterson (the owner of that vehicle), who were subsequently dismissed as defendants.

[3] In particular, the Jaramillos asked that "GEICO be enjoined from continuing practices that violate [its] duties . . . and legal obligations"—i.e., "to stop its practice of failing to provide UM/UIM coverage with limits equal to the limits of liability coverage, where it has failed to obtain a valid waiver/rejection." Aplt. App. at 46 (Compl., filed Oct. 15, 2010).

7

*See* Dist. Ct. Doc. 33, at 1 (Am. Scheduling Order, filed Feb. 15, 2011) (noting the parties' "agree[ment] on a process where key legal issues could [first] be presented").

In early 2011, GEICO filed a motion for summary judgment, arguing that the Policy provided no UM/UIM coverage for Mr. Jaramillo's accident. GEICO contended that the Jaramillos' "written rejection of UM/UIM coverage [was] valid and enforceable as it fully complie[d] with New Mexico law." Aplt. App. at 162 (Summ. J. Mem., filed Feb. 21, 2011). As a result, GEICO argued, its denial of UM/UIM benefits was justified—and because all of the Jaramillos' claims stemmed from an allegedly *improper* denial of UM/UIM benefits, the complaint was not viable. The Jaramillos rejoined that the Option Form was legally deficient for a host of reasons, including that GEICO had not meaningfully incorporated the document into the Policy or made a "clear offer of UM/UIM limits equal to and less than . . . liability limits." *Id.* at 225 (Pls.' Mem. in Opp'n to Summ. J., filed Mar. 30, 2011) (emphasis omitted).

On September 14, 2011, the district court granted summary judgment in GEICO's favor. It concluded that the Option Form signed by Ms. Jaramillo complied with New Mexico law because the document "clearly offered the opportunity to select UM/UIM coverage in an amount equal to or lower than those selected bodily injury liability limits while also providing premium costs corresponding to each level of coverage." *Id.* at 309. The court thus determined that GEICO *had* obtained a valid written rejection of UM/UIM coverage from the Jaramillos and that it had properly incorporated the Jaramillos' rejection of UM/UIM coverage into the Policy.

8

Not to be deterred, the Jaramillos filed a motion to reconsider, which the district court construed as a motion to alter or amend a judgment brought pursuant to Federal Rule of Civil Procedure 59(e).[4] *See* Aplt. App. at 385 (Mem. Op. & Order Den. Recons., filed June 6, 2012). A full round of briefing ensued on the post-judgment motion. Several months later, the district court denied reconsideration, observing that "reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law," *id.* (internal quotation marks omitted), and that the Jaramillos' "repackaging" of arguments from the summary-judgment phase of the litigation was "an improper basis for reconsideration," *id.* at 387. The court then reaffirmed its view that GEICO's Option Form complied with New Mexico law, as articulated by that state's highest tribunal in *Jordan v. Allstate Insurance Co.*, 245 P.3d 1214 (N.M. 2010), and noted the Jaramillos' "fail[ure] to set forth any intervening change in controlling law, new evidence that was previously unavailable, or other need to correct clear error or prevent manifest injustice." Aplt. App. at 391. This appeal followed.

---

[4] Technically, "[a] motion for reconsideration [is] not recognized by the Federal Rules of Civil Procedure." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002). This court construes such a motion as filed pursuant to Rule 59(e) or 60(b), depending on the asserted justification for, and timing of, the motion. *Id.*; *compare Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to reconsider [under Rule 59(e)] include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."), *with* Fed. R. Civ. P. 60(b) (justifying relief for reasons such as "mistake, inadvertence, surprise, . . . excusable neglect; . . . newly discovered evidence . . . ; [or] fraud").

9

**II**

In this diversity case, the substantive law of New Mexico governs our analysis of the Jaramillos' claims, "but we are governed by federal law in determining the propriety of the district court's grant of summary judgment." *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir. 2007) (internal quotation marks omitted). We therefore review the district court's order "de novo, applying the same standard as the district court." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1130 (10th Cir. 2011). "In so doing, we view the evidence and make inferences in the light most favorable to the non-movant." *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue presented, the dispute is "genuine." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party's obligation is to "present more than a scintilla of evidence in favor of his position." *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008).

"[A]n appeal from the denial of a motion to reconsider construed as a Rule 59(e) motion permits consideration of the merits of the underlying judgment." *Hawkins v. Evans*, 64 F.3d 543, 546 (10th Cir. 1995); *accord Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191 (10th Cir. 2006). We generally review a district court's denial of relief under Rule 59(e) for an abuse of discretion. *See Ysais v. Richardson*, 603 F.3d

10

1175, 1180 (10th Cir. 2010). "We will not disturb such a decision 'unless [we have] a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (alteration in original) (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997)). Moreover, as the district court correctly noted in denying reconsideration, we will find "Rule 59(e) relief . . . appropriate only where 'the court has misapprehended the facts, a party's position, or the controlling law.'" *Id.* (quoting *Servants of Paraclete*, 204 F.3d at 1012).

## III

## A

We pause at the outset of our analysis to clarify the issues actually resolved in this order and judgment. Although the Jaramillos purport to raise five issues for our review, we construe their opening brief as presenting *three* issues. For the reasons stated herein, we address only the first of these issues.

## 1

According to the Jaramillos, the first "issue" on appeal is whether GEICO's offer of UM/UIM coverage was invalid for failure to "make clear the amount of stacked UM/UIM coverage available . . . or the corresponding cost" of such coverage.[5] Aplt.

---

[5] In the insurance context, to "stack" coverage means to aggregate it. *See Allstate Ins. Co. v. Indep. Appliance & Refrigeration Serv., Inc.*, 278 F.3d 1102, 1104 n.2 (10th Cir. 2002) (noting, while applying New Mexico law, that "'[s]tacking' . . . occurs
(continued...)

11

Opening Br. at 2. This question dovetails into the second "issue" presented: "[w]hether the district court erred in holding that under New Mexico law, an insurer is not required to inform the insured about premium costs corresponding to each available level of stacked UM/UIM coverage." *Id.* In light of this substantial overlap, we have determined that "Issues I and II" more accurately comprise *one* question—*viz.*, whether the Option Form, through which the Jaramillos chose not to purchase UM/UIM coverage, is invalid as a matter of law because it lacks a discussion or explanation of stacked UM/UIM coverage. We confine our discussion of the merits to this issue and, as explicated below, affirm the district court's conclusion that the Option Form (and, by extension, the Jaramillos' rejection of UM/UIM coverage) satisfies New Mexico law.

**2**

Read together, "Issues III and V"[6] (as stated by the Jaramillos) likewise constitute one core question. In this argument the Jaramillos contend that, through statements in the Policy, GEICO expressly misrepresented to them that stacked UM/UIM coverage was unavailable. GEICO rejoins that the Jaramillos have not preserved this issue for appellate

[5](...continued)
when an individual collects from the insurer under multiple coverages"); *see also Breaux v. Am. Family Mut. Ins. Co.*, 554 F.3d 854, 856 (10th Cir. 2009) (describing "stacking," under Colorado law, as "combining the aggregate limits from separate policies").

[6] The Jaramillos frame "Issue III" as "[w]hether an insured can make a knowing and intelligent rejection of UM/UIM coverage where an insurer misrepresents that stacking of UM/UIM coverage is not available, misrepresents the cost of such coverage, and misrepresents how much coverage is waived." Aplt. Opening Br. at 3. "Issue V" continues in that vein, asking "[w]hether the district court erred in authorizing GEICO's misrepresentations." *Id.*

12

review, and we agree. Consequently, we do not reach the merits of any misrepresentation argument advanced by the Jaramillos here.

The Jaramillos' misrepresentation theory originated in Count Two of their complaint, wherein they alleged that GEICO violated New Mexico's Trade Practices and Frauds Act in several ways, such as "misrepresenting to insureds pertinent facts or policy provisions relating to coverages at issue." Aplt. App. at 43 (quoting N.M. Stat. Ann. § 59A-16-20(A)) (internal quotation marks omitted). Their argument was broad at the inception of this lawsuit and remained so at the summary-judgment phase. In fact, despite having access to their own challenged Policy at all relevant times in the district court proceedings, the Jaramillos never underscored the Policy language constituting these supposed misrepresentations. Instead, they lodged accusations that the Option Form was "confus[ing]" and "mislead[ing]" in violation of New Mexico law. *Id.* at 225. That broad position stands in stark relief to the significantly narrower one asserted on appeal.

In this court, the Jaramillos identify the relevant misrepresentation as anti-stacking language contained in the Policy—that is, GEICO's alleged misrepresentation that stacked UM/UIM coverage was unavailable to them. This is certainly not the same argument propounded to the district court in the first instance. Indeed, our review of the record makes clear that the Jaramillos *never* alleged misrepresentation as it relates to stacked coverage in the pleadings *or* in responding to GEICO's motion for summary judgment. They completely neglected to isolate language from the Policy until the

13

reconsideration stage, *see id.* at 359, at which point the district court properly did not address their newly-minted, post-judgment argument.

Because we find it pellucid that the district court was never fairly presented with this late-stage, more nuanced question pertaining to misrepresentation, we conclude that the Jaramillos have not preserved the issue. And while the Jaramillos' shortcomings in this regard are less egregious than if they had *entirely* failed to allege misrepresentation, they have nonetheless forfeited their misrepresentation argument insofar as their theory relies on the presence or absence of language in the Policy regarding stacking. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) (noting that "if [a] theory . . . [was not] raised before the district court, we usually hold it forfeited"). We decline to address this forfeited theory because of the Jaramillos' "failure to argue for plain error and its application on appeal," which ordinarily, in this circuit, "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131.

**3**

Finally, in advancing "Issue IV," the Jaramillos ask us to resolve the issue of whether GEICO "meaningfully incorporated" the Option Form (and, therefore, their rejection of UM/UIM coverage) into the Policy. Aplt. Opening Br. at 3. We find it inappropriate to do so, given that their argument is limited to a handful of cursory statements such as: "Put simply, GEICO failed to satisfy the fourth requirement laid out [by the New Mexico Supreme Court]—to incorporate an insured's rejection into the

14

policy. . . ." *Id.* at 18 (internal quotation marks omitted); *see also id.* at 12 ("[W]ithout a valid waiver/selection/rejection of UM/UIM coverage, GEICO could not meaningfully incorporate the same . . . ."); *id.* at 17–18 ("Because GEICO failed to make an offer that complies with New Mexico law, it cannot satisfy its obligation to incorporate [the insured's] rejection into the policy. . . ." (alteration in original) (internal quotation marks omitted)). There is no question either that "[s]cattered statements in the appellant's brief are not enough to preserve an issue for appeal," *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 n.4 (10th Cir. 2004), or that we "will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (internal quotation marks omitted). Guided by these principles, we deem this argument inadequately briefed and will not consider it. *See In re FCC 11-161*, 753 F.3d 1015, 1093 (10th Cir. 2014) ("Allband . . . fails to cite to a single case or statute in support of its claim. Consequently, we deem the claim inadequately briefed and thus [unpreserved]."); *Wilburn v. Mid-South Health Dev., Inc.*, 343 F.3d 1274, 1281 (10th Cir. 2003) (noting that we "will not consider issues that are raised on appeal but not adequately addressed").

In sum, we expressly cabin our analysis here to the adequacy of the Option Form provided by GEICO to the Jaramillos, guided by the principles of New Mexico's automobile insurance law. We decline to reach the merits of any of their other arguments in support of reversal.

15

In resisting the district court's summary-judgment ruling, the Jaramillos principally rely on two New Mexico Supreme Court decisions—*Jordan* and *Montano v. Allstate Indemnity Co.*, 92 P.3d 1255 (N.M. 2004)—which they believe resolve the question of the Option Form's validity in their favor. Employing a strained reading of both cases, the Jaramillos appear to assert that the Option Form is legally infirm because it does not flesh out the nuances of stacked UM/UIM coverage.[7] We are not persuaded by

---

[7] We note that the Jaramillos' arguments on this subject—both in the district court and in their opening brief on appeal—reflect a lack of clarity. They fail to articulate what language should be, but is not, printed on the Option Form; this failure significantly undermines their ability to present a cogent argument for reversal. As the appellants, they are required to identify *in their opening brief* their "contentions and the reasons for them, with citations to the authorities and [relevant] parts of the record." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P. 28(a)) (internal quotation marks omitted); *see id.* (observing that "we routinely have declined to consider arguments that are . . . inadequately presented . . . in an appellant's opening brief"). Time and again, however, the Jaramillos have failed to state in any useful way what it means as a practical matter for a UM/UIM rejection form to "discuss" or "explain" stacked coverage. *See* Aplt. Opening Br. at 26 n.6 ("[T]he Jaramillos concede they inelegantly used the phrase 'discussion of stacking' . . . ."). This deficiency has understandably stymied GEICO's attempts to offer a meaningful response. *See, e.g.*, Aplee. Br. at 24 ("Neither *Jordan* nor *Montano* require that UM/UIM rejection forms must become treatises on the law of UM/UIM coverage and must include information on the many nuances regarding the stackability of such coverage in New Mexico.").

Indeed, not until the filing of their reply brief have the Jaramillos attempted to offer *any* language that, in their view, could cure the alleged deficiencies in GEICO's Option Form. Their eleventh-hour explanation is that "[s]imply adding two columns . . . makes clear to the insured the 'maximum amount' of coverage they are being offered for the premium price paid." Aplt. Reply Br. at 8. And, to that end, they suggest that GEICO augment the Option Form with columns titled "Total premium cost" and "Total stacked coverage per person/per accident." *Id.* (capitalization altered). They

(continued...)

16

their unsupported summation of these governing cases regarding the proper construction of New Mexico's uninsured motorist statute.

## 1

First, given the parties' focus (and that of their cited cases) on stacked UM/UIM coverage in New Mexico, some basic contextual background is warranted. "Stacking is a judicially-created doctrine, which thus far has not met the disapproval of the [New

---

[7](...continued)
also intimate that unless the Option Form states, "You may purchase any of the coverage options up to, but not exceeding, your liability coverage limits," *id.*, "an insured is led to believe . . . that [he] can purchase more UM/UIM insurance than what [he] ha[s] in liability coverage," *id.* at 8 n.4. We are not inclined to afford this cursory, late-stage (and still distressingly vague) explanation any solicitude. To do so "would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response." *Hill v. Kemp*, 478 F.3d 1236, 1251 (10th Cir. 2007) (internal quotation marks omitted).

Insofar as the foregoing captures what the Jaramillos seek concerning the Option Form, we recognize that there *are* states that ostensibly embrace and require such language. The courts of Pennsylvania and Hawaii, for instance, arguably could be deemed to have required *some* "discussion" of stacking in the way the Jaramillos presumably mean. *See, e.g.*, *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329, 334 (Pa. 2007); *Macabio v. TIG Ins. Co.*, 955 P.2d 100, 107–09 (Haw. 1998). And, while the Jaramillos make no mention of *Macabio*, we note in particular that this case involved a coverage-selection form with language that we suspect the Jaramillos would like to see on GEICO's Option Form. *See* 955 P.2d at 103 ("The enclosed Selection form allows you to request 'stacked' UM or UIM Coverages. Premium for the 'stacked' options are provided alongside the premiums for the same limit with 'non-stacked' coverage for easy comparison."). But ultimately the Jaramillos must accept the conclusion, as explicated herein, that New Mexico is not among the states that require such stacking-related language. We express no opinion on the propriety of such language and cite it only for purposes of comparison. The operative point is that New Mexico plainly *does not mandate* that level of detail as part of its "workable requirements" for rejecting UM/UIM coverage, *see Jordan*, 245 P.3d at 1221—ergo, the absence of such language cannot support reversal.

17

Mexico] Legislature." *Montano*, 92 P.3d at 1260; *see Rodriguez v. Windsor Ins. Co.*, 879 P.2d 759, 759 (N.M. 1994) ("Our past cases have evolved a strong judicial policy, rooted in [New Mexico's] uninsured motorists insurance statute, favoring stacking . . . ." (citation omitted)), *modified on other grounds by Montano*, 92 P.3d at 1256. It contemplates not only "[t]he process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate," *Black's Law Dictionary* 1534 (9th ed. 2009), but also "intra-policy stacking" in the context of automobile insurance, which is "guided by the simple fact that UM personal injury coverage [follows the insured and] does not follow the automobile," *Montano*, 92 P.3d at 1258. *See also Mena v. Safeco Ins. Co.*, 412 F.3d 1159, 1162 (10th Cir. 2005) (though applying Wyoming law, recognizing that stacking is "the phenomenon of insureds or claimants against them adding all available policies together to create a greater pool in order to satisfy their actual loss" (internal quotation marks omitted)).

In recent years, New Mexico courts have addressed the validity of automobile insurance policies that purport to *preclude* stacking. One notable decision in that regard is *Montano*, wherein the insurer attempted to rely on anti-stacking language in a policy it issued so as to *avoid* stacking coverage despite the insured's payment of multiple premiums. *See* 92 P.3d at 1256. In *Montano*, the plaintiff posed to the New Mexico Supreme Court the "invitation to declare all anti-stacking provisions void as against public policy," which the court rejected. *Id.* The *Montano* court instead declared its intent to resolve the "seemingly inherent ambiguities in anti-stacking clauses." *Id.* at

18

1260. Its core holding was that "an insurance company should obtain written rejections of stacking *in order to limit its liability based on an anti-stacking provision*" in a policy. *Id.* (emphasis added).[8]

Six years later, in *Jordan*, the New Mexico Supreme Court nodded—in very general terms—to its holding in *Montano*, which it viewed as having properly balanced the public-policy concerns of freedom of contract and the need to honor "the broad intent of the [UM/UIM] statute." *Jordan*, 245 P.3d at 1221 (alteration in original) (quoting *Montano*, 92 P.3d at 1255) (internal quotation marks omitted). But it is important to recognize that *Jordan* did no more than give this general nod to *Montano*: the *Jordan* court did not comment on the question of stacking, and it did not explicitly forge a nexus between the new standard that it announced and the concept of stacking.

Setting the stage for explicating this standard, we note that it was clear when *Jordan* was decided that New Mexico's UM/UIM statute (1) required every vehicle insurance policy to provide UM/UIM coverage "in minimum limits for bodily injury or death . . . and such higher limits as may be desired by the insured, but up to the limits of liability specified in [the] bodily injury" portion of a policy, N.M. Stat. Ann. § 66-5-301(A); and (2) conferred upon the insured "the right to reject [UM/UIM] coverage," *id.*

---

[8]     To illustrate its holding, the court offered the following hypothetical (which we find comparable to the situation presented by the Jaramillos): "in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages." *Montano*, 92 P.3d at 1260–61.

19

§ 66-5-301(C); *accord Weed Warrior*, 245 P.3d at 1211.  However, the *Jordan* court was troubled by those provisions' "[failure to] expressly specify the form or manner that a rejection must take in order to be effective."  245 P.3d at 1220.  *Jordan* was therefore a milestone along the state's path of interpreting its UM/UIM statute because it expressly "[held] that a rejection of UM/UIM coverage equal to the limits of liability is valid only if it is obtained in writing and made a part of the policy that is delivered to the insured."  *Id.*

Most salient for our purposes, *Jordan* presented the opportunity to clarify the mechanics of applying New Mexico's uninsured motorist statute.  At the outset of its discussion, the court noted that it was consolidating three cases "in order to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage."  *Id.* at 1219.  In each of those cases, the insurers issued automobile insurance policies providing UM/UIM coverage in amounts less than the liability coverage.  *Id.* at 1217–19.  The insureds argued that "each insurer failed to obtain a valid rejection of UM/UIM coverage equal to the limits of liability," and the court of appeals went on to rule in favor of all three groups of insureds.  *Id.* at 1219.  In light of its newly-minted decision in *Weed Warrior* (issued the same day), *see supra* note 1, the New Mexico Supreme Court articulated a test to guide courts going forward on "the form and manner that offers and rejections of UM/UIM coverage must take" to satisfy state law.  *Jordan*, 245 P.3d at 1219.

Bearing in mind that "[t]he provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that

20

rule must be 'construed strictly to protect the insured,'" *id.* (quoting *Romero v. Dairyland*,

803 P.2d 243, 245 (N.M. 1990)), the court stated as follows:

> If an insurer does not (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject, the policy will be reformed to provide UM/UIM coverage equal to the liability limits.

*Id.* at 1221. With respect to the second prong, the *Jordan* court clarified that an insurer

must provide the "premium charge for [the] maximum amount of UM/UIM coverage"

(the maximum amount being "an amount equal to the policy's liability limits"[9]) as well as

the "premium cost for the minimum amount of UM/UIM coverage allowed by Section

66-5-301(A)," and "the relative costs for any other levels of UM/UIM coverage offered to

the insured"—*viz.*, the costs for a *range* of coverage between the minimum and maximum

amounts. *Id.* The court alluded to the public-policy justification for this rule by

---

[9] It is evident that the Jaramillos construe "maximum amount of coverage" and "maximum *stacked amount* of coverage" as fungible concepts. *See* Aplt. Opening Br. at 33 (arguing that "GEICO expressly violates *Jordan*'s mandate that the insured be advised of the maximum UM/UIM coverage available, and the cost for the same" in the context of arguing that GEICO should have indicated that stacking was available). However, the language of *Jordan* makes clear that the "maximum amount" contemplated is simply an amount equal to the policy's liability limits, and we decline to graft the crucial word "stacked" onto its holding. *See* 245 P.3d at 1221 (without mentioning stacking, holding that "[w]hen issuing an insurance policy, an insurer must inform the insured that he or she is entitled to purchase UM/UIM coverage in an amount equal to the policy's liability limits and must also provide the corresponding premium charge *for that maximum amount of UM/UIM coverage*" (emphasis added)).

21

observing that "[p]roviding . . . a menu of coverage options and corresponding premium costs will enable the insured to make an informed decision about the level of UM/UIM coverage he or she wants to purchase and can afford." *Id.* Importantly, as noted, except for the general reference to *Montano*, the *Jordan* court was silent on the issue of stacking, and it did not clearly tie stacking to its new UM/UIM coverage-rejection standard.

## 2

Next, having clarified the rules of *Montano* and *Jordan*, we are left with no doubt that the Jaramillos misunderstand both holdings in a manner that fatally undermines their position. The Jaramillos characterize the New Mexico Supreme Court as having staked a clear position in *Montano* and *Jordan*—namely, that the court "reaffirmed and clarified its repeated pronouncements that insurers must give consumers adequate information regarding the amounts of stacked UM/UIM coverage available." Aplt. Opening Br. at 12 (internal quotation marks omitted). By contrast, we view both cases as ironclad support for GEICO's position—and, more importantly, for affirming the district court.

## a

With respect to *Montano*, the Jaramillos claim that case "provides the legal foundation for the [New Mexico Supreme] Court's mandate that insurance carriers provide the premium costs for each available level of *stacked* coverage." *Id.* at 28 (internal quotation marks omitted). But that argument does not tip the balance in their favor. *Montano* is easily distinguishable from the Jaramillos' case, and it does not control the outcome of this appeal.

22

By its terms, *Montano*'s holding is a narrow one; notably, it presupposes a policy

with anti-stacking language. *See* 92 P.3d at 1260 (holding that the "solution

to . . . inherent ambiguities *in anti-stacking clauses*" was to "obtain written rejections of

stacking in order to limit [an insurer's] liability based on an anti-stacking provision"

(emphasis added)); *id.* at 1261 ("[T]he conclusion we now draw from the history of

stacking litigation in this State [is] . . . that anti-stacking clauses are almost inherently

ambiguous and are no longer effective at precluding stacking."). In fact, the *Montano*

court unmistakably declared that "the question presented in this case, specifically, [was]

whether [the court] would preclude stacking when the insurance policy purports to

preclude it." *Id.* at 1258.

By contrast, GEICO maintains that it *does* stack vehicle insurance coverage in

New Mexico and that it has *never* employed anti-stacking language in such policies to

avoid aggregating an insured's UM/UIM coverage. And GEICO's assertion finds support

in the record; a cursory review of the Policy—both as initially issued and after the

Jaramillos' rejection of UM/UIM coverage—demonstrates that there is no language

germane to the concept of stacking *at all* in the document. Notably, the Policy contains

no provision like the clause at issue in *Montano*, which purported to limit stacking. *See*

*id.* at 1257 ("[W]e will stack or aggregate up to two, but no more than two, Uninsured

Motorist Insurance for Bodily Injury coverages under this policy."). Thus, GEICO's

record-substantiated contention alone clearly renders *Montano* inapposite here.

Cases interpreting *Montano* likewise have not suggested that its holding sweeps as

23

broadly as the Jaramillos insist that it does—*viz.*, broadly enough to establish the legal predicate for a purported obligation of insurers to specify in the Option Form (and waiver of UM/UIM coverage) the premium costs for each available level of stacked coverage. *See, e.g.*, *Whelan v. State Farm Mut. Auto. Ins. Co.*, --- P.3d ----, 2014 WL 2707843, at *6 (N.M. 2014) (describing *Montano* as merely "holding for the first time that insurers were expected to be aware of rejection requirements regarding UM/UIM coverage").

One noteworthy example in this regard is the New Mexico Court of Appeals's recent decision in *Arias v. Phoenix Indemnity Insurance Co.*, --- P.3d ----, 2013 WL 6494110 (N.M. Ct. App. 2013), *cert. denied*, 321 P.3d 935 (N.M. 2014). Not surprisingly, the Jaramillos bring this case to our attention because of the court's initial statement that "*Montano* holds that insurers must obtain written rejections of stacking to avoid liability," *Arias*, 2013 WL 6494110, at *3, and its nod to "*Montano*'s discussion of stacking as extra coverage for which the parties have contracted," *id.* at *4 (internal quotation marks omitted). In fact, the Jaramillos contend, the import of this language is that "[*Arias*] held that just as UM/UIM coverage has to be read into a policy absent a valid rejection of UM/UIM coverage, so too must stacked coverage." Notice of Supp. Authority, No. 12-2108, at 1 (10th Cir., filed Dec. 19, 2013). We disagree.

A more careful reading of *Arias* makes short work of the Jaramillos' suggestion that it bolsters their appellate argument concerning *Montano*. The *Arias* court expressly stated that "*Montano* dealt with a policy that specifically sought to limit stacking by its terms, but wound up having those limitations struck down and full per-vehicle stacking

24

imposed on the policy when an ambiguity resulted in an invalid rejection of stacking."

2013 WL 6494110, at *4.  That language laid the foundation for the court's central

concern: whether, when UM/UIM coverage is judicially imposed on a policy, that court-

created coverage must also be stacked.  The *Arias* court was especially concerned about

the "legal ambiguity as to the extent of that [judicially-imposed] coverage," *id.* at

*5—much as the *Montano* court sought to alleviate "inherent ambiguities in anti-stacking

clauses," 92 P.3d at 1260.  Just as *Montano* was clearly predicated on the ambiguousness

of anti-stacking language in a policy, *Arias* presupposed ambiguousness caused by the

imposition of UM/UIM coverage on a policy.  In other words, stacking in the situation

contemplated by *Arias* follows *only after* the court finds an invalid rejection of UM/UIM

coverage and reads that coverage into a policy.

We are ultimately satisfied that our interpretation of *Arias* is congruent with that

court's own reasoning, as demonstrated by the following excerpts:

> Plaintiff attempts to impose intra-policy stacking of [UM/UIM]
> coverage into an insurance policy *we previously reformed*, owing to the
> imperfect handling of her rejection of UM/UIM coverage. . . .
>
> *Where courts confer UM/UIM coverage* where a policy is silent on the
> matter, it follows that each vehicle also acquires coverage, and those
> coverages are to be stacked. . . .
>
> We hold that, *as much as coverage itself to the maximum limit of
> liability must be read into [the insured's] policy*, stacking of coverage
> for each of the two vehicles thus insured *must now follow suit* . . . .
>
> [W]e conclude that as we inject UM/UIM coverage into a policy as a
> matter of law for failure of any rejection of coverage, the law also
> requires the imposition of a per-vehicle stacking of coverage into a

25

single policy. In this case, ambiguities arose in Arias's policy's language, owing first to the defective rejection of coverage requiring that coverage be read into the policy. Second, the requirement noted above that coverage applies to any vehicle demands stacking of coverage in the absence of indications to the contrary. *Having extended to her the availability of UM/UIM coverage as a matter of law, we also include per-vehicle stacking.* We believe that, in the absence of a rejection of coverage altogether, the coverage that must be extended is the full measure accorded her by the default positions afforded by law. This includes UM/UIM coverage generally, specifically to be stacked as to each of her insured vehicles.

2013 WL 6494110, at *1, *4–5 (emphases altered). As we see it, the foregoing trajectory of logic does not substantiate the Jaramillos' argument that "[*Arias*] demonstrates that the full offer of UM/UIM coverages includes stacked coverages, [and that] therefore GEICO's offer of coverage was defective because its policy specifically prohibited stacking, i.e., did not offer stacked coverage." Notice of Supp. Authority at 1. Rather, it demonstrates that the Jaramillos have placed the metaphorical cart before the horse by insisting that we read stacking into a policy *before* reaching the issue of whether they validly rejected UM/UIM coverage. This we will not do, for *Jordan* answers the threshold validity question in GEICO's favor.

In sum, we conclude that *Montano* does not stand for the proposition that the Option Form could only have been valid under New Mexico law if it had specifically mentioned the concept and effect of stacking coverage. *Arias* does not change our analysis in any appreciable fashion. Having properly concluded that the Jaramillos validly rejected the option to purchase UM/UIM coverage, the district court was never obligated to consider—let alone read into the policy—stacking coverage.

26

**b**

Turning to *Jordan*, we likewise conclude that it does not do the mighty work the Jaramillos claim it does—at least not as applied to their circumstances. At bottom, *Jordan*'s primary contribution to New Mexico's insurance jurisprudence is its presentation of four "workable requirements" for a valid rejection of UM/UIM coverage: (1) an offer to the insured to purchase UM/UIM coverage in an amount equal to the policy's liability limits; (2) information regarding corresponding premium charges for each available UM/UIM coverage choice; (3) the insured's "written rejection of UM/UIM coverage equal to the liability limits"; and (4) incorporation of that rejection into the policy such that the insured may fairly reconsider his decision. 245 P.3d at 1221. *Jordan* does not mandate—either explicitly or implicitly—that a rejection of UM/UIM coverage equal to a policy's liability limits is invalid without a "discussion" or "explanation" of stacking principles.[10]

As noted above, the district court conducted a thorough review of GEICO's Option Form and deemed it fully compliant with the requirements of *Jordan.* On appeal, the Jaramillos continue their attack on the Option Form under *Jordan*'s second prong—*viz.*, they argue that the document does not "inform the insured about premium costs corresponding to the available levels of coverage." *Id.* at 1221. In mounting this

---

[10]     In our view, stacking is relevant to this appeal *only* in the context of GEICO's duty under *Jordan* to "inform the insured about premium costs corresponding to the available levels of coverage." 245 P.3d at 1221.

27

challenge, they deem the Option Form "legally deficient because it does not meaningfully allow the insured to understand how much UM/UIM coverage is being offered, or how much coverage is being given up, at the premium prices provided in the form." Aplt. Opening Br. at 19. The sole argument advanced in support of this allegation is that an insurer's obligation to provide insureds with the premium costs for each available level of UM/UIM coverage (the second prong of the *Jordan* test) "necessarily includes stacked coverage in a multiple-vehicle policy, in order to allow insureds to contract for the exact amount of coverage they can afford and want to purchase." *Id.* at 20. Thus, reason the Jaramillos, GEICO was obligated to list substantially more information on the Option Form than it did.

The Jaramillos operate from the premise that they "were entitled to purchase up to $50,000/$100,000 in UM/UIM coverage on each of their four vehicles because they had chosen $50,000/$100,000 in liability coverage on each of their four vehicles." *Id.* at 21. This is unquestionably true under the *Weed Warrior* line of cases. *See* 245 P.3d at 1213–14; *accord Jordan*, 245 P.3d at 1217; *Curry v. Great Nw. Ins. Co.*, 320 P.3d 482, 486 (N.M. Ct. App. 2013), *cert. denied*, 324 P.3d 375 (N.M. 2014). And by the Jaramillos' calculations, the stacking effect of choosing this maximum level of UM/UIM coverage (a choice they undisputedly did not make) would have "afford[ed] coverage limits of $200,000.00 per person"—i.e., $50,000 liability coverage multiplied by each of the four vehicles—and "$400,000.00 per occurrence"—i.e., $100,000 liability coverage multiplied by each of the four vehicles—"for any incident involving an uninsured or

28

underinsured motorist tortfeasor." Aplt. Opening Br. at 21. This, too, is true.

However, according to the Jaramillos, the problem with the foregoing is that none of this stacked-coverage arithmetic is printed on the Option Form. *See id.* at 21–22 ("[N]othing in the [Option Form] . . . *informs* the Jaramillo family of the *stacked* UM/UIM coverage benefits available to them. Nothing in the [Option Form] advises the Jaramillos of their ability to select lower limits with a corresponding advisory [discussion] of what the *total in stacked limits* would afford in coverage." (emphases added)). This suggests to the Jaramillos that the Option Form does not convey "the *actual* UM/UIM coverage available to them," *id.* at 22 (emphasis added), and that it somehow obfuscates the issue of rejecting UM/UIM benefits.

The Jaramillos further contend that, based on the Option Form,

> an insured cannot consider that, for the cost of four premiums, the insured has accessibility to four times as much UM/UIM coverage as is indicated on the option form (e.g., $25,000/$50,000 in UM coverage x 4 stacked vehicles = $100,000/$200,000 in stacked UM/UIM coverage). Instead, the insured is led to believe that he or she must pay four premiums and will only have single limits (i.e., $25,000/$50,000) available.

*Id.* at 23; *see* Aplt. App. at 192. In other words, they maintain that the Option Form "simply [did] not alert the Jaramillos to the fact that for every $38.90 in coverage (on each vehicle) they were getting an additional $25,000/$50,000 in stacked UM/UIM coverage." Aplt. Opening Br. at 28. We need not (and consequently do not) opine on whether this is a feasible interpretation of the document, however, for the Option Form *on its face* clearly comports with *Jordan*'s mandate that it "inform the insured about

29

premium costs corresponding to the available levels of coverage." 245 P.3d at 1221.

Critically, *Jordan* does not expressly require that the Option Form provide the premium

costs corresponding to the available levels of *stacked* coverage.[11] Thus, the Jaramillos'

rejection of UM/UIM insurance could not have been invalid under New Mexico law

simply because the Option Form did not tally up the stacked coverage amounts for the

Jaramillos' four vehicles—in other words, because it did not multiply each available level

of coverage by four.

The New Mexico Supreme Court's holding in *Whelan* bolsters our view that

*Jordan* means what we construe it to mean: "*Jordan* followed *Monta*[*n*]*o* by requiring

similar premium disclosure as to the premium charges corresponding to each available

option of UM/UIM coverage." *Whelan*, 2014 WL 2707843, at *7 (internal quotation

marks omitted). *Jordan* does, of course, require that insurers provide the *premium costs*

when offering UM/UIM coverage. And here, the Option Form returned by the Jaramillos

plainly *did* provide the relevant premium costs for each level of coverage; it simply did

not list the total amount of *stacked* coverage that would be available at each level. But

*Jordan* did not require it to do so. It mandated only the four requirements listed above,

---

[11]    The district court emphasized this observation in granting summary judgment for GEICO, stating: "At no point does *Jordan* mandate or even imply that UM/UIM Option Forms must have a discussion of stacking in order to be valid. This failure to mention a requirement that the Option Form discuss stacking is especially fatal to [the Jaramillos'] argument in light of *Jordan*'s stated aim 'to provide guidance on the technical requirements for valid offers and rejections of UM/UIM coverage.'" Aplt. App. at 314 (quoting *Jordan*, 245 P.3d at 1219).

30

which the district court properly deemed GEICO to have satisfied by offering the state-required amount of UM/UIM coverage; informing the Jaramillos of the same in the Option Form, *see* Aplt. App. at 191–92; receiving the returned, signed Option Form (i.e., a written rejection); and meaningfully incorporating the rejection of coverage into the Policy by providing "Endorsement Declarations at the front of the Policy expressly stat[ing] that coverage [had] been rejected," *id.* at 318.

In sum, we find that neither *Jordan* nor *Montano* expressly requires the kind of "discussion of stacking"—*viz.*, a totaling of the premium cost for all vehicles and the provision of the associated amount of stacked coverage at each level of coverage—that the Jaramillos suggest must be on a valid Option Form (and waiver of UM/UIM coverage).[12] In support of this conclusion, we observe that the philosophy underlying New Mexico's stacking jurisprudence is twofold: "fulfilling the reasonable expectations of the insured and ensuring that the insured receive what he or she pays for." *Montano*, 92 P.3d at 1261. Here, both of these functions were achieved. The Jaramillos opted out

---

[12]    The district court concluded that

> [t]o the extent that *Jordan* cites *Montano*, it is not to expand *Montano*'s holding regarding anti-stacking provisions to impose new requirements for rejecting UM/UIM coverage. The *Jordan* Court cited *Montano*'s requirement that insurance carriers provide insureds with the premium costs for each available level of stacked coverage as an example of striking the balance between freedom of contract and honoring the broad intent of the UM/UIM statute.

Aplt. App. at 313.

31

of UM/UIM coverage entirely and, as such, could have had no reasonable expectation of having such coverage. *See* Aplt. App. at 191; *cf. Montano*, 92 P.3d at 1261–62 ("If the primary goal is to fulfill the reasonable expectations of the insured, then there is no need to look at anything beyond the language of the policy itself."). And, since they at no point tendered any premium payments for UM/UIM benefits, they appropriately did not receive such coverage after Mr. Jaramillo's (admittedly unfortunate) accident.

Perhaps the underlying import of the Jaramillos' argument is that if they had known stacked coverage was available—and that they would therefore be getting four times the coverage for the premium paid in the event of an accident—they would have opted to purchase UM/UIM coverage instead of declining it. Insofar as that has been intimated, we find no record support for it. And, because New Mexico case law does not buttress the Jaramillos' argument that GEICO was obligated to discuss stacking in its Option Form, we affirm the district court's grant of summary judgment to GEICO.

## C

For the same reasons discussed above concerning the summary-judgment ruling, the Jaramillos' challenge to the district court's denial of reconsideration also fails. The motion to reconsider was predicated on the Jaramillos' insistence that, in granting summary judgment to GEICO, the district court disregarded binding New Mexico authority. *See* Aplt. App. at 326 (Mot. for Recons., filed Oct. 12, 2011) (arguing that the summary-judgment ruling "forsakes" the principles of *Jordan* and *Montano*). It in no way established the "extraordinary circumstances" of an intervening change in controlling

32

law or new, but previously unavailable evidence. *Servants of Paraclete*, 204 F.3d at 1012. And its claim that the summary-judgment ruling "circumvent[ed] GEICO's obligation to make plain its offer of *stackable UM/UIM coverage*," Aplt. App. at 330 (emphasis added), does not reveal any "need to correct clear error or prevent manifest injustice," *Servants of Paraclete*, 204 F.3d at 1012, because the assertion is incorrect.

Having reviewed the Jaramillos' arguments regarding reconsideration, we discern no facts or legal theories other than ones they repackaged from earlier proceedings or *could have* asserted during those proceedings. The district court was therefore under no obligation to "revisit[], albeit in somewhat different forms, the same issues already addressed" at summary judgment, and it is clear that "[o]n this basis alone we [may] affirm the district court's denial of the motion to reconsider." *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) (internal quotation marks omitted). Nonetheless, the district court *did* address the Jaramillos' recycled assertions—rebutting them with reasoned, legally supported justifications, no less. In our view, the court's careful attention to the Jaramillos' submissions militates against a finding of abuse of discretion. We are satisfied that its denial of reconsideration was squarely within "the bounds of permissible choice in the circumstances," *Phelps*, 122 F.3d at 1324, and we affirm that judgment of the district court as well.

33

# IV

The Jaramillos have also filed a motion to certify to the New Mexico Supreme Court the issue we have addressed on appeal. More specifically, they request that we ask the New Mexico Supreme Court "[whether] a motor vehicle insurer [may] issue a valid waiver of uninsured motorists coverage where the waiver form does not advise the insured of stacked uninsured motorists coverage, and fails to advise the insured of the maximum coverage, or the extent of coverage, available." Mot. to Certify, No. 12-2108, at 3 (10th Cir., filed Oct. 1, 2012). Finding no basis to do so, we deny the Jaramillos' motion.

Tenth Circuit Rule 27.1(A) governs the certification of state-law questions and provides that, "[w]hen state law permits, this court may: (1) certify a question arising under state law to that state's highest court according to that court's rules; and (2) abate the case in this court to await the state court's decision of the certified question." 10th Cir. R. 27.1(A); *accord Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008). New Mexico permits its highest state tribunal to "answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision or statute of this state." N.M. Stat. Ann. § 39-7-4. The decision to certify ultimately "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). We have said that the certification procedure "is particularly appropriate where the legal question at issue is novel and the applicable

34

state law is unsettled," *Allstate Ins. Co. v. Brown*, 920 F.2d 664, 667 (10th Cir. 1990) (per curiam), two considerations that often arise in insurance cases. *See, e.g.*, *Ball v. Wilshire Ins. Co.*, 498 F.3d 1084, 1084 (10th Cir. 2007) (certifying questions regarding the interpretation of Oklahoma's compulsory liability insurance statute); *Hartford Ins. Co. of Midwest v. Cline*, 427 F.3d 715, 716 (10th Cir. 2005) (certifying a question regarding construction of "family member" under New Mexico's vehicle insurance statute); *Cline*, 427 F.3d at 717 (noting that an insurance question was "distinctively a state-law issue").

However, in our view *Jordan* and *Montano* provide a coherent basis for resolving the Jaramillos' appeal, making a resort to certification unnecessary. *Cf. Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves."). Assuming *arguendo* that this case implicates a novel legal issue, it is well-settled that "just because a new state law question is raised, '[c]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law.'" *Copier ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (alteration in original) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)). We are confident that we have fulfilled our "duty to decide questions of state law even if difficult or uncertain," *id.*, in the case at hand.

Additionally, it is undisputed that at no point in the proceedings before the district court did the Jaramillos seek certification of this (or, indeed, any other) state-law

question.  In fact, the record unambiguously shows that the Jaramillos' proposed certification question did not surface until *after* the district court's award of summary judgment to GEICO.  This court "generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."  *Massengale v. Okla. Bd. of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994); *accord Enfield ex rel. Enfield v. A.B. Chance Co.*, 228 F.3d 1245, 1255 (10th Cir. 2000); *see also Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1364 (10th Cir. 1999) ("Late requests for certification are rarely granted by this court . . . , particularly when the district court has already ruled.").  We certainly *may* do so, *see, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fisher*, 609 F.3d 1051, 1058–59 (10th Cir. 2010) (sua sponte certifying "a matter of exceptional importance" and multiple "unsettled questions of Colorado law"), but we are "never compelled [to], even when there is no state law governing an issue," *Boyd Rosene*, 178 F.3d at 1365.  We decline to do so in this instance.  "[N]either this court nor the parties would reap any conservation of time, energy, or resources" from certification—even if "[c]ertification may well have been an appropriate option at some time earlier in [the] litigation."  *Id.*

We find that the New Mexico Supreme Court's holdings in *Jordan* and *Montano* establish "a reasonably clear and principled course" for us to follow.  *Pino*, 507 F.3d at 1236.  Consequently, we follow that course and deny the Jaramillos' motion to certify a question of state law.

36

## V

We **AFFIRM** the district court's grant of summary judgment in favor of GEICO,

**AFFIRM** its denial of reconsideration, and **DENY** the Jaramillos' motion to certify.


ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge