# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __June 14, 2018__

**NOS. A-1-CA-34961 & A-1-CA-35661 (Consolidated)**

**ANGELA LUERAS and JOE LUERAS, individually,**

Plaintiffs-Appellants,

and

**ANGELA LUERAS and JOE LUERAS,**
**as parents and guardians of A. LUERAS, a minor,**

Plaintiffs,

v.

**GEICO GENERAL INSURANCE COMPANY,**

Defendant-Appellee,

and

**MARIA RODRIGUEZ, FARMERS INSURANCE COMPANY**
**OF ARIZONA a/k/a FARMERS INSURANCE GROUP a/k/a**
**FARMERS INSURANCE EXCHANGE,**

Defendants,

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alan M. Malott, District Judge**

And

**DAVID VAN EPPS,**

Plaintiff-Appellant,

v.

**GEICO INDEMNITY COMPANY**

Defendant-Appellee,

and

**CESAR MONTAÑO,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Sarah C. Backus, District Judge**

Law Offices of Geoffrey R. Romero
Geoffrey R. Romero
Albuquerque, NM

O'Connell Law LLC
Erin B. O'Connell
Albuquerque, NM

Widner Law Firm LLC
Susan H. Widner
Albuquerque, NM

for Lueras Appellants

Anthony G. Lopez, Attorney at Law
Anthony G. Lopez
Taos, NM

for Van Epps Appellant

Chapman and Priest, PC
Stephen M. Simone
Albuquerque, NM

Perry Law, P.C.
Meloney Perry
Stacy Thompson
Dallas, TX

for GEICO Appellees

**OPINION**

**KIEHNE, Judge.**

{1}     Plaintiffs, Angela and Joe Lueras, and David Van Epps, filed two separate lawsuits against GEICO General Insurance Company and GEICO Indemnity Company[1], respectively, in response to GEICO's refusal to pay uninsured/underinsured (UM/UIM) benefits to them. GEICO declined to pay because Plaintiffs had rejected UM/UIM coverage. The district courts granted summary judgment to GEICO in both cases. These appeals raise substantially similar issues, and for that reason we exercise our discretion to consolidate them for decision. *See* Rule 12-317(B) NMRA.

{2}     On appeal, Plaintiffs make the following claims:

1.     The UM/UIM rejection forms violated New Mexico law because they did not explain that the UM/UIM benefits would be stacked.

2.     The insurance policies were misleading and ambiguous because they incorrectly stated that UM/UIM benefits would not be stacked.

3.     The Luerases separately claim that GEICO violated New Mexico law because the declaration page misrepresents the amount of UM/UIM coverage.

4.     GEICO's requirement that Plaintiffs either purchase the same level of UM/UIM insurance on each vehicle covered by a single

---

[1]GEICO General Insurance Company and GEICO Indemnity Company are referred to throughout this opinion collectively as GEICO.

policy, or reject UM/UIM insurance entirely, violated New Mexico law.

5.  The Luerases separately claim that GEICO's failure to obtain another rejection of UM/UIM coverage when they added a vehicle to their policy entitles them to UM/UIM coverage.

6.  Mr. Van Epps separately contends that after his wife initially selected UM/UIM coverage below the liability limits of the policy, GEICO sent her a form that improperly discouraged her from purchasing UM/UIM coverage, and that her rejection of UM/UIM coverage on that form is therefore invalid.

{3}    We affirm. Claims 1 and 2 are identical to claims that we recently considered and rejected in *Ullman v. Safeway Insurance Co.*, 2017-NMCA-071, 404 P.3d 434, *cert. granted*, 2017-NMCERT-___ (A-1-CA-36580 Aug. 24, 2017). Claim 3 is also foreclosed by the rationale in *Ullman*. We reject Claim 4 because New Mexico law does not preclude an insurer from requiring an insured to choose the same UM/UIM coverage (or to reject UM/UIM coverage entirely) for all vehicles covered by a single policy. Claim 5 is foreclosed by our decision in *Vigil v. Rio Grande Insurance of Santa Fe*, 1997-NMCA-124, ¶¶ 14-17, 124 N.M. 324, 950 P.2d 297, which has not been modified by any later decisions by our Supreme Court. Finally, we reject Claim 6 because GEICO was required by law to send the UM/UIM coverage form to Mrs. Van Epps, and nothing in it discouraged her from selecting UM/UIM coverage.

**BACKGROUND**

**I.     Lueras v. GEICO General Insurance Company**

{4} The Luerases bought an automobile insurance policy for their three vehicles from GEICO in 2009. The policy had liability limits of $50,000 per person and $100,000 per occurrence. GEICO presented the Luerases with a form on which they could select or reject UM/UIM coverage. The form did not explain that the UM/UIM coverages for each vehicle would be stacked. The form provided the Luerases with the option of selecting the same UM/UIM coverage for all three vehicles, or rejecting UM/UIM coverage entirely. The Luerases rejected UM/UIM coverage. Later, the Luerases added a fourth vehicle to their policy, and GEICO again sent the Luerases a form on which to select or reject UM/UIM coverage. The Luerases did not sign or return the form to GEICO.

{5} In 2011, Plaintiff Angela Lueras was the driver of, and her daughter a passenger in, a vehicle that was involved in a crash with Defendant Maria Rodriguez. Ms. Rodriguez's automobile insurance coverage was not sufficient to fully compensate the Luerases for the injuries they suffered as a result of the crash. The Luerases asked GEICO to provide UIM benefits, but GEICO denied their claim because they had rejected UM/UIM coverage. The Luerases then sued GEICO and Ms. Rodriguez in the Second Judicial District Court, Bernalillo County, arguing that their rejection of UM/UIM coverage was invalid on several grounds. The parties filed cross-motions for summary judgment. The district court granted summary judgment

in GEICO's favor and denied the Luerases' cross-motion for summary judgment. The Luerases timely appealed.

## II.    Van Epps v. GEICO Indemnity Company

{6}    Mr. Van Epps' wife, Wendy Van Epps, purchased a GEICO insurance policy in 2010 on four vehicles that the couple owned. The policy had liability limits of $50,000 per person and $100,000 per occurrence. Mrs. Van Epps selected UM/UIM coverage of $25,000 per person and $50,000 per occurrence, which was less than the liability limits. Two days later, GEICO sent Mrs. Van Epps a form letter asking her to select or reject UM/UIM coverage. According to the menu of options on the form, if Mrs. Van Epps wanted to select UM/UIM coverage, she had to purchase the same level of coverage on all four vehicles, and if she wanted to reject UM/UIM coverage, she had to reject it on all four vehicles. She could not select different UM/UIM coverage limits for each vehicle, or select UM/UIM coverage on some vehicles and reject it on others. The form also did not inform Ms. Van Epps that the UM/UIM policies would be stacked in the event of an accident with an uninsured or underinsured motorist. Mrs. Van Epps rejected UM/UIM coverage on all four vehicles.

{7}    While working as a security officer at a local restaurant in 2012, Mr. Van Epps was threatened by Defendant Cesar Montaño, who was attempting to patronize the

4

restaurant. When Mr. Montaño left in his car, he drove it towards Mr. Van Epps, hitting him and knocking him to the ground. Mr. Montaño then backed up his car and ran over Mr. Van Epps' leg. Mr. Van Epps sustained permanent injuries.

{8}     Mr. Montaño also had a GEICO insurance policy, but it provided only $25,000 in coverage, which was insufficient to cover Mr. Van Epps' injuries. Mr. Van Epps sought UIM benefits under his own policy. GEICO refused to pay based on Mrs. Van Epps' rejection of UM/UIM coverage. Mr. Van Epps then sued GEICO and Mr. Montaño in the Eighth Judicial District Court, Taos County, New Mexico, raising arguments similar to those made by the Luerases. The parties filed cross-motions for summary judgment. The district court granted summary judgment to GEICO, and denied Mr. Van Epps' cross-motion for summary judgment. Mr. Van Epps timely appealed.

**DISCUSSION**

**I.      Standard of Review**

{9}     Each claim in this case involves the interpretation of insurance policy language, and we therefore apply de novo review. *See Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 60, 123 N.M. 752, 945 P.2d 970 ("The interpretation of an insurance contract is a matter of law about which the court has the final word."). We also apply de novo review to district court orders granting summary judgment. *See Farmington*

*Police Officers Ass'n Commc'n Workers of America Local 7911 v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204 ("An appeal from an order granting a motion for summary judgment presents a question of law subject to de novo review.").

**II.  Plaintiffs' Claim That the Policies and Rejection Forms Should Have Explained That Their UM/UIM Benefits Would Be Stacked, Their Claim That the Rejection Form Was Ambiguous Because It Purported to Prohibit Stacking, and the Luerases' Claim That the Declaration Page Misrepresents the Amount of UM/UIM Coverage Are Controlled by Our Decision in *Ullman***

{10}  In *Jordan v. Allstate Insurance Co.*, 2010-NMSC-051, ¶ 22, 149 N.M. 162, 245 P.3d 1214, our Supreme Court stated that to obtain a valid rejection of UM/UIM coverage, an insurer must "(1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about the premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject[.]" Plaintiffs argue that GEICO's insurance policy and its UM/UIM rejection form violated requirements (2) and (3) of *Jordan* because they did not explain that UM/UIM benefits would be stacked in the event of a collision with an uninsured or underinsured motorist, thus misrepresenting the amount of UM/UIM coverage that was actually available to them. *See Black's Law Dictionary* 1623 (10th ed. 2014)

6

(defining "stacking" as "[t]he process of obtaining benefits from a second policy on the same claim when recovery from the first policy alone would be inadequate"). Plaintiffs also argue that GEICO's insurance policy was ambiguous and misleading because it contained language that purported to prohibit stacking, although the anti-stacking provision was invalid under New Mexico law.

{11} We recently considered, and rejected, identical claims in *Ullman*. 2017-NMCA-071, ¶¶ 39-52. That decision is controlling, and accordingly we affirm the district courts' orders rejecting these claims. *See Arco Materials, Inc. v. N.M. Taxation & Revenue Dep't*, 1994-NMCA-062, ¶ 3, 118 N.M. 12, 878 P.2d 330 (stating that a formal Court of Appeals opinion is controlling even when our Supreme Court has granted certiorari to review the case), *rev'd on other grounds sub nom. Blaze Constr. Co., Inc. v. N.M. Taxation & Revenue Dep't*, 1994-NMSC-110, 118 N.M. 647, 884 P.2d 803.

{12} In addition, the Luerases argue that GEICO violated requirement (4) of *Jordan*. Although the Luerases' rejection of UM/UIM coverage was incorporated into the policy via a declarations page, the Luerases argue that the declarations page "affirmatively misrepresents how much coverage was rejected under GEICO's policy" because it shows "that only a single limit of UM coverage was waived" without explaining that UM/UIM benefits would be stacked in the event of a collision

with an uninsured or underinsured motorist. *Ullman* rejected claims that requirements (2) and (3) of *Jordan* were violated where the insurer did not explain that UM/UIM benefits would be stacked, *see Ullman*, 2017-NMCA-071, ¶¶ 39-52, and we see no reason why *Ullman*'s rationale would not also apply to the Luerases' declarations page, which contains the same alleged defect. Accordingly, we affirm the district court's rejection of this claim.

**III. GEICO's Requirement That Plaintiffs Either Purchase the Same Level of UM/UIM Insurance on Each Vehicle Covered by a Single Policy, or Reject UM/UIM Insurance Entirely, Did Not Violate New Mexico Law**

{13} Plaintiffs claim that GEICO's "all-or-nothing" requirement that they purchase the same level of UM/UIM insurance on each of their vehicles, or reject UM/UIM coverage on all vehicles, is contrary to our Supreme Court's decision in *Montaño v. Allstate Indemnity Co.*, 2004-NMSC-020, 135 N.M. 681, 92 P.3d 1255, and thus was an invalid offer of UM/UIM coverage. Under Plaintiffs' view of the law, an insured with four vehicles must be allowed to select, say, UM/UIM coverage of $100,000/$200,000 on one vehicle, $50,000/$100,000 on the next two vehicles, and no UM/UIM coverage at all on the fourth, or any other combination that the insured may desire. We conclude that Plaintiffs have misinterpreted *Montaño*, and we reject this claim.

{14}     *Montaño* did not address the requirements for making a valid offer of UM/UIM coverage, but instead involved the "judicially-created doctrine" of stacking. *Id.* ¶ 17. In that case, the plaintiff bought UM/UIM coverages on his four vehicles, but the policy said that he could only stack two of those coverages. *Id.* ¶ 2. The plaintiff filed a lawsuit alleging that he was entitled to stack all four UM/UIM coverages. *Id.*

{15}     When the case reached our Supreme Court, the plaintiff asked the Supreme Court to "declare that all anti-stacking clauses are void as against New Mexico's stated policy in favor of stacking." *Id.* ¶ 8. Our Supreme Court acknowledged that its cases "ha[d] expressed a public policy in favor of stacking[,]" *id.* ¶ 9, but rejected the plaintiff's argument, stating that "requiring stacking in all cases on a take-it-or-leave-it basis would reduce the freedom of the parties to contract for less coverage and thus their freedom to decide how much coverage they can afford," which "could frustrate, rather than advance, the legislative intent behind the [UM/UIM] statute." *Id.* ¶ 16. The Supreme Court explained that the Legislature's intent in requiring insurers to offer minimum levels of UM/UIM coverage was "to encourage insureds to purchase such coverage[,]" and that "[r]equiring stacking for all vehicles would put the insured who owns multiple vehicles in the position of paying for all of the coverages or rejecting UM[/UIM] coverage altogether, rather than deciding how much coverage they can afford." *Id.* ¶ 16. The Supreme Court stated that if an insurance company

9

wants to preclude stacking, it "should obtain written rejections of stacking in order to limit its liability based on an anti-stacking provision." *Id.* ¶ 19.

{16} The Supreme Court then went on to explain how an insurance company could go about obtaining an adequate written rejection of stacking:

> As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages.

*Id.* ¶ 20. Our Supreme Court concluded that "an insurance policy that complies with this requirement will avoid the conclusion . . . that anti-stacking clauses are almost inherently ambiguous and are no longer effective at precluding stacking." *Id.* ¶ 21.

{17} Plaintiffs interpret this "illustration" in *Montaño* as requiring all insurers to offer UM/UIM coverage on a per-vehicle basis and as prohibiting an insurer from offering UM/UIM coverage on a per-policy basis. But Plaintiffs forget the context that led to the inclusion of this passage. In *Montaño*, our Supreme Court considered an argument that stacking should be required on all vehicles covered by a multi-vehicle policy. 2004-NMSC-020, ¶¶ 8-21. The Court recognized New Mexico's

10

public policy in favor of stacking, but rejected the plaintiffs' argument based on both freedom-of-contract grounds and a concern that *requiring* all-or-nothing policies would discourage the purchase of UM/UIM insurance. Thus, in the passage on which Plaintiffs rely, our Supreme Court was merely explaining what an insurance company would have to do *if* it wanted to obtain an effective rejection of *stacking* by an insured. By its own terms, *Montaño's* "illustration" does not describe a mandatory requirement imposed on all insurers offering UM/UIM coverage, but rather provides a voluntary option for those insurers that do not wish to offer stacking.

{18}    We conclude that *Montaño* did not consider whether automobile insurers should be required to offer policyholders UM/UIM coverage on a per-vehicle basis, much less impose such a requirement. *See Padilla v. State Farm Mut. Auto. Ins. Co.*, 2002-NMCA-001, ¶ 10, 131 N.M. 419, 38 P.3d 187 (explaining that "cases are not authority for propositions not considered" (internal quotation marks and citation omitted)). Other than the illustration in *Montaño*, Plaintiffs have cited to no authority supporting their contention that GEICO must offer UM/UIM coverage on a per-vehicle basis, as opposed to a per-policy basis. Further, we find nothing in the UM/UIM statute that provides otherwise. *See* NMSA 1978, § 66-5-301; *see also Briggs v. Am. Nat'l Prop. & Cas. Co.*, 209 P.3d 1181, 1185-86 (Colo. Ct. App. 2009) (holding that insured has no right to be offered UM/UIM coverage on a per-vehicle

basis under nearly identical Colorado statute). Accordingly, GEICO's offer of UM/UIM coverage on a per-policy basis was not contrary to New Mexico law.

**IV.  GEICO Was Not Required to Obtain an Additional Rejection of UM/UIM Coverage When the Luerases Added Another Vehicle to Their Policy**

{19}    At some point after purchasing automobile insurance and rejecting UM/UIM coverage, but before the accident, the Luerases added a fourth vehicle to their policy. At that time, GEICO sent a UM/UIM rejection form to the Luerases, but the Luerases did not sign or return it. The Luerases argued in the district court, as they do on appeal, that adding the fourth vehicle was a new and different offer of coverage, and GEICO's failure to obtain a new UM/UIM rejection form rendered the Luerases' earlier rejection of UM/UIM coverage invalid.

{20}    The district court rejected this argument, relying on our decision in *Vigil*, 1997-NMCA-124. In *Vigil* we held that when an insurer has obtained a valid rejection of UM/UIM insurance, the insurer is not required to obtain a new rejection from the insured each time a new vehicle is added to the policy. *Id.* ¶¶ 14-17. In reaching that conclusion, we noted that the relevant statute does not require that UM/UIM coverage be included in "a renewal policy where the named insured has rejected the coverage in connection with a policy previously issued to him or her by the same insurer." *Id.* ¶ 14 (alteration omitted) (quoting NMSA 1978, § 66-5-301(C) (1983)). We also noted that the policy in question provided that any vehicles that the insured bought would

12

be automatically added to the policy, which meant that "there [was] no change in the insurance contract or the coverage purchased pursuant to that contract when a vehicle [was] added to the policy." *Id.* ¶ 15. We concluded that in these circumstances, the addition of vehicles did not create a new policy, and therefore no new rejection of UM/UIM coverage was required. *Id.* ¶¶ 16-17.

{21}    Here, the district court correctly determined that no new rejection of UM/UIM coverage was required when the Luerases added a vehicle to their policy. The Legislature has not amended Section 66-5-301(C) since *Vigil* was decided. The UM/UIM rejection form that the Luerases signed when they originally bought the policy informed them multiple times that their rejection of UM/UIM coverage would automatically apply to any vehicles added to the policy unless the Luerases informed GEICO otherwise. First, the form said that "my Uninsured/Underinsured Motorist Coverage election applies to this policy and all vehicles insured under this policy until I notify [GEICO], in writing, that I wish to change my election." Next, the form advised the Luerases that "[m]y Uninsured/Underinsured Motorist coverage election shall apply to any renewal, reinstatement, substitute, amended, altered, modified, or replaced policy with this company or any affiliated Government Employees Insurance Company." Finally, in the section of the form where the Luerases checked that they wished to reject UM/UIM coverage, the form stated that "I understand that until I

inform [GEICO] in writing that I wish to add UM/UIM Coverage to my insurance policy, no automobile insurance policy issued to me by [GEICO] will provide coverage if I am injured or my property is damaged by an uninsured or underinsured motorist." These provisions made it abundantly clear that any vehicles added to the policy would not create a new policy, and therefore no new rejection of UM/UIM coverage was required.

{22}     The Luerases argue, however, that *Vigil* has been "modified" by our Supreme Court's decisions in *Montaño*, 2004-NMSC-020, ¶ 20, and *Jordan v. Allstate Insurance Company*, 2010-NMSC-051, ¶¶ 20-22, 149 N.M. 162, 245 P.3d 1214. As we have already explained, *Montaño* was concerned with how insurance companies could obtain a valid waiver of stacking, not with how to obtain a valid rejection of UM/UIM coverage. *Montaño* did not even consider, much less hold, that *Vigil* was modified or overruled. In *Jordan*, our Supreme Court consolidated three cases in which the issue was whether the insureds had rejected UM/UIM coverage when they initially bought their policies. 2010-NMSC-051, ¶¶ 3-12. The *Jordan* Court explained what an insurer must do to obtain a valid rejection of UM/UIM coverage and held that a policy that failed to meet those requirements would be reformed to provide UM/UIM coverage in the same amount as the policy's liability limits. 2010-NMSC-051, ¶¶ 3-12, 20-21. In *Jordan* our Supreme Court had no occasion to consider

whether a new rejection form would be required if a vehicle was added to the policy at a later date, and nothing in *Jordan* even suggests, much less holds, that our decision in *Vigil* should be modified. Accordingly, we reject the Luerases' claim.

**V.     The Letter and UM/UIM Option Form That GEICO Sent to Mrs. Van Epps Were Not Improper or Ambiguous**

{23}     Mr. Van Epps argues that certain GEICO documents were misleading and discouraged Mrs. Van Epps from selecting UM/UIM coverage. Mrs. Van Epps originally selected UM/UIM coverage at the $25,000/$50,000 level, which was less than the $50,000/$100,000 bodily injury liability limits. Two days later, GEICO sent her both a letter and an "option form" on which to select or reject UM/UIM coverage. The letter said that "[i]t is important that we receive this form back in order to continue your policy at the current premium, so please don't delay. If you do not complete this form, we are required to make adjustments to your coverage, which will result in an increase in your premium." Neither the option form nor the letter explained what "adjustments" would be made or why the premium would increase if the form were not signed and returned to GEICO. Mr. Van Epps argues that GEICO sent the option form to "discourage" his wife from purchasing UM/UIM coverage, and that the option form caused her to believe that "in order to complete the processing of her new policy, she had to sign the [option form]." Mr. Van Epps contends that his wife's rejection of UM/UIM coverage is therefore invalid because

15

"GEICO's scheme of sending its insureds this [option form] and [letter] after the insureds have selected UM/UIM coverage . . . violated New Mexico public policy by misleading and discouraging the purchase of UM/UIM coverage[.]"

{24} To the extent that Mr. Van Epps argues that GEICO should not have sent the letter, his argument lacks merit. As GEICO correctly points out, our Supreme Court has held that where, as here, an insured selects UM/UIM coverage that is lower than the policy's liability limits, that functions as a rejection of the maximum amount of coverage statutorily available. *See Progressive Northwestern Ins. Co. v. Weed Warrior Servs.*, 2010-NMSC-050, ¶¶ 14-15, 149 N.M. 157, 245 P.3d 1209 (reflecting that "[a]s Section 66-5-301 requires insurers to offer UM/UIM coverage up to the liability limits of the policy, it follows that the choice by the insured to purchase any lower amount is a rejection"). Thus, to give effect to Mrs. Van Epps' choice, GEICO was required to send her a form on which to indicate her selection of a level of UM/UIM coverage. *Jordan*, 2010-NMSC-051, ¶ 2.

{25} Mr. Van Epps acknowledges that GEICO was required to obtain a written waiver from Mrs. Van Epps, but complains that "GEICO did not in any way indicate in its initial application that it would later be sending [an option form] with a [letter][,]" and questions why GEICO did not do so at that time. Mr. Van Epps cites no legal authority in support of his argument that GEICO was required to provide the

16

option form at the time of Mrs. Van Epps' original application for insurance, and therefore we assume that none exists. *See In re Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). Accordingly, we reject Mr. Van Epps' argument that GEICO acted improperly by sending the option form and letter to Mrs. Van Epps.

{26}    As for Mr. Van Epps' arguments that the option form and letter were ambiguous and thus "discouraged" the purchase of UM/UIM insurance, we disagree. While it is true that the letter stated that failure to *return the form* would lead to an increase in the insurance premium, nothing in the letter or form suggested that Mrs. Van Epps had to *reject* UM/UIM coverage to prevent her premium from rising. The option form allowed her to select UM/UIM coverage at the same level as before, to select UM/UIM coverage at a different level, or to reject UM/UIM coverage entirely. Accordingly, we reject Mr. Van Epps' argument that the option form improperly discouraged the purchase of UM/UIM coverage.

**CONCLUSION**

{27}    For all of these reasons, we affirm the district courts' grants of GEICO's motions for summary judgment and denials of Plaintiffs' cross-motions for summary judgment.

17

{28}     **IT IS SO ORDERED.**


                                              _____
                                              **EMIL J. KIEHNE, Judge**


**I CONCUR:**



_____
**STEPHEN G. FRENCH, Judge**

**ATTREP, Judge (specially concurring).**

{29} I concur with today's opinion, but write separately as I have reservations about *Ullman*, 2017-NMCA-071, the decision upon which Section II of the Discussion is premised. The Court in *Ullman* broadly held that an insurer, in offering UM/UIM coverage on a multiple-vehicle insurance policy, is not required to explain stacked coverage or inform the insured about premium costs for each available level of stacked coverage. *Id.* ¶¶ 15, 44.

{30} *Ullman* relied heavily on, and adopted, the Tenth Circuit's approach in *Jaramillo v. Government Employees Insurance Co.*, 573 F. App'x 733 (10th Cir. 2014) (non-precedential). *See Ullman*, 2017-NMCA-071, ¶¶ 34-38. *Jaramillo*, in turn, hung its analysis on *Jordan*, 2010-NMSC-051, which set out a four-factor test an insurer must follow in order to obtain a valid rejection of UM/UIM coverage. *Id.* ¶ 30. The circumstances before the Supreme Court in *Jordan*, however, were different from those in *Jaramillo*. In *Jordan*, the insureds accepted UM/UIM coverage at a level lower than their policy liability limits; because one or more of the *Jordan* factors were not met, the policies were reformed to provide UM/UIM coverage equal to the policy limits. 2010-NMSC-051, ¶¶ 5-12, 31-35. In contrast, the insureds in *Jaramillo* (as well as in the cases before us today) rejected UM/UIM coverage

19

entirely but were never informed of the total level of stacked coverage actually being offered. *Jaramillo*, 573 F. App'x at 734-36, 745, 747-48.

{31} Mechanically applying *Jordan*, the Tenth Circuit determined that an insurer is only obligated to set out the premium charges for each level of UM/UIM coverage—it need not inform the insured of the total amount of stacked coverage available at each level. *Jaramillo*, 573 F. App'x at 748-49; *see also Ullman*, 2017-NMCA-071, ¶ 15. The Tenth Circuit rationalized that it need not address stacking because stacking comes into play as a judicially-created doctrine only after an insured has purchased UM/UIM coverage. *See Jaramillo*, 573 F. App'x at 744-46. The Tenth Circuit construed *Jordan* as being divorced from our Supreme Court's stacking jurisprudence, proclaiming that "except for the general reference to *Monta[ñ]o*, the *Jordan* court was silent on the issue of stacking, and it did not clearly tie stacking to its new UM/UIM coverage-rejection standard." *Id.* at 744.

{32} I think this to be an inaccurate gloss on our Supreme Court's jurisprudence. *Montaño* requires "insurers [to] disclose the premium costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage." *Whelan v. State Farm Mut. Auto. Ins. Co.*, 2014-NMSC-021, ¶ 25, 329 P.3d 646 (citing *Montaño*, 2004-NMSC-020, ¶¶ 17, 20); *see also Jordan*, 2010-NMSC-051, ¶ 24 ("In *Monta[ñ]o*, this Court

20

struck th[e] balance [between freedom of contract and the intent of the UM/UIM statute] by requiring insurance carriers to provide insureds with the premium costs for each available level of stacked coverage in order to allow insureds to contract for the amount of coverage they can afford and want to purchase."). Notwithstanding this, our Court in *Ullman* adopted the reasoning of *Jaramillo* wholesale. *See Ullman*, 2017-NMCA-071, ¶¶ 34-38, 43.

{33}    The problem with relieving insurers of any obligation to disclose stacked coverage levels when obtaining UM/UIM rejections—as *Jaramillo* and *Ullman* permit—becomes apparent when examining the facts at issue in the cases before our Court today. In these cases, GEICO readily admits that it sells its insureds stacked UM/UIM coverage. GEICO, however, does not explain this to its insureds, and does not disclose the total amount of stacked coverage being offered at each premium level. A look at GEICO's UM/UIM Selection/Rejection Form, which is reproduced in relevant part below, is worthwhile:

UM/UIM Bodily Injury Coverage Limits
Your Bodily Injury Liability Coverage Limit is: $50,000/$100,000

| Coverage Limit Per Person/Per Accident | | VEHICLE1 | VEHICLE2 | VEHICLE3 | VEHICLE4 |
|---|---|---|---|---|---|
| ( ) | $25,000/$50,000 | $ 36.60 | $ 36.60 | $ 36.60 | $ 36.60 |
| ( ) | $50,000/$100,000 | $ 54.90 | $ 54.90 | $ 54.90 | $ 54.90 |
| ( ) | $100,000/$200,000 | $ 73.20 | $ 73.20 | $ 73.20 | $ 73.20 |
| ( ) | $100,000/$300,000 | $ 82.40 | $ 82.40 | $ 82.40 | $ 82.40 |

21

| ( ) | $300,000/$300,000 | $ 95.60 | $ 95.60 | $ 95.60 | $ 95.60 |
| ( ) | $250,000/$500,000 | $ 103.30 | $ 103.30 | $ 103.30 | $ 103.30 |
| ( ) | $300,000/$500,000 | $ 104.40 | $ 104.40 | $ 104.40 | $ 104.40 |
| ( ) | $500,000/$500,000 | $ 113.90 | $ 113.90 | $ 113.90 | $ 113.90 |
| ( ) | $500,000/$750,000 | $ 121.20 | $ 121.20 | $ 121.20 | $ 121.20 |
| ( ) | $500,000/$1MIL | $ 124.80 | $ 124.80 | $ 124.80 | $ 124.80 |
| ( ) | $1MIL/$1MIL | $ 145.40 | $ 145.40 | $ 145.40 | $ 145.40 |

Looking at the first line, for example, GEICO offers the insured the statutory minimum amount of UM/UIM coverage of $25,000 per person/$50,000 per accident. *See* NMSA 1978, §§ 66-5-301 (1983), 66-5-215 (1983). The insured has no option of purchasing this coverage on, for instance, only one or two vehicles. Instead, if the insured elects this coverage, she must pay four premiums. Yet GEICO's UM/UIM Selection/Rejection Form makes no mention of the fact that if four premiums are paid, the insured is entitled to stacked coverage of four times the listed coverage (e.g., $100,000/$200,000, not $25,000/$50,000).

{34} Consistent with the holdings in *Jaramillo* and *Ullman*, GEICO claims that it has no obligation to disclose to its insureds the stacked coverage amounts. It reasons that this is a *rejection* case, governed by *Jordan*, not a *stacking* case. While it is true that this case is not necessarily governed by "judicial stacking," this misses the mark. GEICO stacks on its own initiative—not because it is judicially imposed after the fact. *See Jaramillo v. Providence Washington Ins. Co.*, 1994-NMSC-018, ¶ 4 n.1, 117

22

N.M. 337, 871 P.2d 1343 (explaining the difference between "judicial stacking" and "policy stacking"); *see also Jaramillo*, 573 F. App'x at 745 ("GEICO maintains that it *does* stack vehicle insurance coverage in New Mexico and that it has *never* employed anti-stacking language in such policies to avoid aggregating an insured's UM/UIM coverage."). Perhaps GEICO has chosen to offer stacked UM/UIM coverage because of the long line of New Mexico cases imposing stacking by judicial construction where the insurer has not obtained a valid waiver of stacked coverage. *See Montaño*, 2004-NMSC-020, ¶¶ 9-14 (summarizing the Supreme Court's stacking jurisprudence). The reason GEICO stacks, however, is of no import. GEICO stacks.

{35}     But GEICO does not disclose to the insured the level of stacked UM/UIM coverage that it is *actually* offering. This runs afoul of the guiding principle behind *Jordan*—that "in order for the offer and rejection requirements of [the UM/UIM statute] to effectuate the policy of expanding UM/UIM coverage, the insurer is required to *meaningfully offer* such coverage and the insured must *knowingly and intelligently act* to reject it before it can be excluded from the policy." *Marckstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, ¶ 16, 147 N.M. 678, 228 P.3d 462; *see Jordan*, 2010-NMSC-051, ¶ 18 (citing *Marckstadt*, 2010-NMSC-001, ¶¶ 16-17). "If[, as here,] the policy documentation is unclear, the insured will not be able to make an informed decision whether to purchase and stay with that policy (and that insurance

23

company) or to opt for another." *Rodriguez v. Windsor Ins. Co.*, 1994-NMSC-075, ¶ 21, 118 N.M. 127, 879 P.2d 759. Given GEICO's UM/UIM Selection/Rejection Form and the fact that GEICO stacks from the outset, it would seem that GEICO's offers of UM/UIM coverage in these cases may be "so inadequate or misleading as to render [the Plaintiffs'] rejection ineffective under the [UM/UIM] statute." *Marckstadt*, 2010-NMSC-001, ¶ 16. *Ullman*, however, has charted a different course. Under *Ullman*, GEICO has complied with the four-factor test in *Jordan* and no further analysis is required.

{36}     Notwithstanding my concerns about whether *Ullman* was correctly decided, I concur in this case because this issue was recently decided by a panel of our Court, in a published opinion, which now awaits decision by the Supreme Court. *See Arco Materials, Inc.*, 1994-NMCA-062, ¶ 19 ("Notwithstanding my concerns about whether the issue was correctly decided . . . , however, I believe it is more important for this Court to follow its own precedent than to allow the rights of the parties to be governed by which panel of judges is assigned to the case." (Black, J. specially concurring)).


_____

**JENNIFER L. ATTREP, Judge**

24