**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN HAWLEY,

     Plaintiff - Appellant,

v.

FARM BUREAU PROPERTY &
CASUALTY INSURANCE COMPANY,

     Defendant - Appellee.

No. 19-2183
(D.C. No. 1:18-CV-00489-JHR-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McHUGH**, and **EID**, Circuit Judges.
_____

John Hawley suffered injuries in an automobile accident. The other driver was at fault and underinsured. Mr. Hawley recovered $25,000 from the at-fault driver's insurer, State Farm. He then asked his insurer, Farm Bureau, to pay the rest of his damages under his uninsured motorist/underinsured motorist ("UM/UIM") coverage. Farm Bureau paid $75,000—the UM/UIM policy limit of $100,000 less $25,000 to offset the State Farm payment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

When Mr. Hawley purchased his Farm Bureau policy, he selected UM/UIM coverage, but he also signed an endorsement rejecting stacked coverage, limiting his UM/UIM coverage to $100,000. After the accident, however, Mr. Hawley thought he should be entitled to "stacked" UM/UIM coverage of $600,000 because he insured six vehicles with Farm Bureau.

Mr. Hawley sued Farm Bureau, alleging his rejection of stacked coverage was not valid under New Mexico law. The district court disagreed and granted summary judgment to Farm Bureau. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

### A. *UM/UIM Coverage and Stacking*

An at-fault driver in an automobile accident who lacks enough insurance to cover the injured party's damages is an uninsured or underinsured motorist. UM/UIM coverage allows an injured party to recover from its own insurer in this circumstance, up to the UM/UIM coverage limit. *See Progressive Nw. Ins. Co. v. Weed Warrior Servs.*, 245 P.3d 1209, 1211 (N.M. 2010).

"Stacked" coverage enables an insured to increase this coverage limit by aggregating UM/UIM coverage across multiple vehicles for an accident involving any one of the vehicles. As explained in *State Farm Mutual Automobile Insurance Co. v. Safeco Insurance Co.*, 298 P.3d 452 (N.M. 2013), "The term 'stacking' refers to an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total

2

policy limits are exhausted." *Id.* at 454 (quotation omitted).  For instance, the coverage limit doubles when an injured party insures two vehicles and stacks coverage across those vehicles.

## B. *Factual Background*

### 1. **Mr. Hawley's Insurance Policy**

Farm Bureau issued Mr. Hawley a motor vehicle insurance policy covering six vehicles and providing bodily injury liability coverage of $100,000 per person and $300,000 per accident.  When Mr. Hawley bought the policy, he completed an "**Uninsured And Underinsured Motor Vehicle Coverage Stacking Rejection/Coverage Selection**" form.  *See* App. at 91-92.

As described below, Farm Bureau allowed Mr. Hawley to (a) select UM/UIM coverage and, if he did, (b) select stacked UM/UIM coverage.  He chose UM/UIM coverage but rejected stacked coverage.  Farm Bureau then issued the policy showing Mr. Hawley's selections as (c) declarations.

#### a. *UM/UIM selection*

The selection form described base-level UM/UIM coverage—UM/UIM coverage without stacking.  It instructed Mr. Hawley that he could (1) purchase coverage up to his liability limit, (2) purchase coverage in a lesser amount, or (3) reject coverage.

The form provided a menu of "Available UM Coverage Limit[s]":  the "[l]iability limit" of "$100,000 per person/$300,000 per accident," two intermediate offerings of $50,000/$100,000 and $25,000/$50,000, and "$0 – REJECT UM coverage completely."

3

*Id.* at 91. Next to the various coverage levels, the form listed the applicable premiums. The following excerpt from his policy shows Mr. Hawley selected the maximum coverage level ($100,000/$300,000).

| Please select the desired UM coverage limit below:<br><br>Available UM Coverage Limit<br>(cannot exceed Liability limit): | Non-stacked UM Comparable Policy Premium* | Stacked UM - Comparable Policy Premium* |
|---|---|---|
| ☐ $0 - REJECT UM coverage completely: | $ 0 | $ 0 |
| ☐ $25,000 per person/$50,000 per accident | $ 137.12 | $ 343.24 |
| ☐ $50,000 per person/$100,000 per accident | $ 198.80 | $ 542.72 |
| ☒ $100,000 per person/$300,000 per accident | $ 274.16 | $ 726.56 |

\* The selection of Non-stacked UM verses Stacked UM is made on the next page.    (The premiums shown above are UM premiums only)

*Id.*[1]  Note that the policy offered non-stacked and stacked coverage at various levels of base UM/UIM coverage.

The policy listed "[r]epresentations," including that "UM coverage ha[d] been explained" and that the insured "selected the UM coverage limit as indicated." *Id.* at 92 (emphasis omitted). Mr. Hawley signed below these representations.

b. *Stacking selection*

The policy also allowed Mr. Hawley to select whether any UM/UIM coverage he purchased would be stacked for all six vehicles. As the foregoing excerpt shows, the selection form listed the options and applicable premiums for non-stacked and stacked coverage. For example, the premium for the maximum level of non-stacked UM/UIM coverage was $274.16, and the premium for the stacked equivalent was $726.56. Farm Bureau did not offer Mr. Hawley a choice of stacked coverage on fewer than six vehicles.

---

[1] The highlighting appears in the record.

4

The form then instructed that Mr. Hawley could reject stacked coverage. It also explained the benefits from paying for stacked coverage: "Intra-Policy Stacked UM Coverage refers to combining the UM coverage limits . . . for each vehicle specifically insured for UM coverage under the policy." *Id.*

The following excerpt from the policy shows Mr. Hawley selected the option stating "I reject Intra-Policy Stacked UM Coverage and, instead, select Non-Stacked UM Coverage." *Id.* He signed his name under this selection.[2]

**INTRA-POLICY STACKED UNINSURED/UNDERINSURED MOTORISTS (UM) COVERAGE REJECTION**

You have the option to reject Intra-Policy Stacked coverage, and instead, purchase Non-Stacked UM Coverage. Intra-Policy Stacked UM Coverage refers to combining the UM coverage limits, for you and members of your household, for each vehicle specifically insured for UM coverage under the policy.

**PLEASE SELECT ONE OF THE TWO OPTIONS BELOW:**

☐ I request Intra-Policy Stacked UM Coverage

☒ I reject Intra-Policy Stacked UM Coverage and, instead, select Non-Stacked UM Coverage

*Id.* [3]

c. *Declarations*

The declarations in Mr. Hawley's policy reflected both the UM/UIM coverage level he selected and his rejection of stacking for each of his six insured vehicles. Each

---

[2] Mr. Hawley's wife later completed a materially similar UM/UIM and stacking selection form, which was incorporated into the insurance policy before the accident. The parties and the district court focused on Mr. Hawley's selection form.

[3] The highlighting appears in the record.

5

entry said that the UM/UIM coverage was $100,000 per person/$300,000 per accident,

and "Uninsured and Underinsured Motor Vehicle Stacking Rejected." *Id.* at 94-96.

The policy also explained the meaning of "stacking rejected":

> If stacking rejected is indicated in the Declarations for a
> particular vehicle then the limits provided for that vehicle to
> protect against damages "caused by" accidents with
> "uninsured motor vehicles" and "underinsured motor
> vehicles" are to be applied separately to that vehicle and
> cannot be stacked, added together or combined to determine
> the amount of insurance available from one "occurrence" . . . .

*Id.* at 101.

## 2. **Accident and Claim**

In 2015, Mr. Hawley was involved in a car accident and suffered injuries. He

recovered the policy limit of $25,000 from State Farm, the at-fault driver's insurer. Farm

Bureau then paid Mr. Hawley $75,000, reflecting $100,000 of UM/UIM coverage minus

the statutory offset of $25,000 from the at-fault driver's policy.[4] Farm Bureau capped its

payment at the non-stacked coverage limit in Mr. Hawley's policy.

## C. *Procedural Background*

In 2018, Mr. Hawley sued Farm Bureau in New Mexico state court. Farm Bureau

removed the action to the U.S. District Court for the District of New Mexico on diversity

---

[4] The New Mexico UM/UIM "statute limits the insured's recovery to the amount of uninsured motorist coverage purchased for the insured's benefit; that amount will be paid in part by the tortfeasor's liability carrier and the remainder by the insured's uninsured motorist insurance carrier." *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1099 (N.M. 1985); *see* N.M. Stat. § 66-5-301(B).

grounds. Mr. Hawley and Farm Bureau agreed to have a magistrate judge conduct the proceedings.

Mr. Hawley voluntarily dismissed all of his claims except those relating to stacking. Farm Bureau then moved for summary judgment, arguing that Mr. Hawley could not stack his UM/UIM coverages. The district court granted summary judgment for Farm Bureau and dismissed the action with prejudice.

## II. **DISCUSSION**

Mr. Hawley argues his rejection of stacked UM/UIM insurance was invalid because Farm Bureau did not provide him an opportunity to "reject each and every possible combination of stacking for each and every vehicle under his policy." *See* Aplt. Br. at 12. He insists that Farm Bureau—rather than offering a choice only between no stacking at all or stacking coverage on all six of his vehicles—should have offered him the choice of stacking on a per-vehicle basis.

For example, at his selected base UM/UIM coverage level of $100,000 per person, Mr. Hawley contends that Farm Bureau should have offered him the opportunity to stack his UM/UIM coverage across two vehicles (doubling his coverage to $200,000), or stack his coverage across three vehicles (tripling his coverage to $300,000), or stack his coverage across four vehicles (quadrupling his coverage to $400,000), and so on.[5] Only then, he argues, would a rejection of stacked coverage be valid.

_____

[5] To the extent that Mr. Hawley suggests these choices should be available for each base UM/UIM coverage level, our analysis remains the same.

We conclude New Mexico law does not require insurers to offer such per-vehicle stacking to obtain a valid rejection.

## A. *Additional Legal Background*

### 1. **Standard of Review**

"We review de novo the district court's grant of summary judgment and apply the same legal standard used by the district court." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 849 (10th Cir. 2015) (quotation omitted). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, [the court] view[s] the evidence and the reasonable inferences to be drawn from the evidence in the light most favorable to the nonmoving party." *Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (quotation omitted).

"We also review legal questions de novo, including the district court's interpretation of [state] law . . . ." *Black & Veatch Corp. v. Aspen Ins. (UK)*, 882 F.3d 952, 957 (10th Cir. 2018).[6] "Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation omitted). In making this determination, we may look to "decisions rendered by lower courts in the relevant state, appellate decisions in other states with

---

[6] The parties agree New Mexico law governs.

similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (quotation omitted).

### 2. New Mexico Law on UM/UIM Coverage

#### a. *UM/UIM statute*

By statute, motor vehicle insurance issued in New Mexico must offer UM/UIM coverage. *See* N.M. Stat. § 66-5-301(A), (B); *see also* N.M. Code R. § 13.12.3 (regulation addressing UM coverage).[7] The insurer must offer levels of UM/UIM coverage above a statutory minimum and up to the liability coverage limit. *See* N.M. Stat. § 66-5-301(A); *Weed Warrior Servs.*, 245 P.3d at 1211. An insured may decline UM/UIM coverage. *See* N.M. Stat. § 66-5-301(C).

#### b. *New Mexico Supreme Court's application of the statute*

The New Mexico Supreme Court has observed that this "UM/UIM statute is intended to expand insurance coverage and to protect individual members of the public against the hazard of culpable uninsured motorists." *Weed Warrior Servs.*, 245 P.3d at 1211 (quotation omitted). Thus, "the uninsured motorist statute must be liberally

---

[7] Although the New Mexico statute requires UM/UIM coverage to be offered with motor vehicle insurance, the insurance follows the insured rather than a vehicle. *See Chavez v. State Farm Mut. Auto. Ins. Co.*, 533 P.2d 100, 103 (N.M. 1975). For instance, "UM coverage also insures one against bodily injury while a pedestrian or a passenger in someone else's vehicle." *Montano v. Allstate Indem. Co.*, 92 P.3d 1255, 1258 (N.M. 2004).

construed to implement the purpose of compensating those injured through no fault of their own." *Schmick v. State Farm Mut. Auto. Ins. Co.*, 704 P.2d 1092, 1095 (N.M. 1985). Ambiguous policies "are construed against the insurer." *See Rodriguez v. Windsor Ins. Co.*, 879 P.2d 759, 763 (N.M. 1994), *modified*, *Montano v. Allstate Indem. Co.*, 92 P.3d 1255, 1256 (N.M. 2004). As a result, "UM/UIM coverage [is] the default when the insured has not exercised the right to reject." *Marckstadt v. Lockheed Martin Corp.*, 228 P.3d 462, 468 (N.M. 2009).

In *Jordan v. Allstate Insurance Co.*, 245 P.3d 1214 (N.M. 2010), the New Mexico Supreme Court identified the steps an insurer must take "to obtain a valid rejection" of UM/UIM coverage. *See id.* at 1221. The court expressed concern that insurers were "offer[ing] UM/UIM coverage in ways that are not conducive to allowing the insured to make a realistically informed" or "knowing and intelligent" decision to reject UM/UIM coverage. *See id.* at 1220. To remedy this problem, the court said that insurers must

> (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject . . . .

*Id.* at 1221.

If an insurer fails to meet these requirements, "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *See id.*

3. **New Mexico Law on Stacked Coverage -** *Montano*

Unlike UM/UIM coverage, no New Mexico statute specifically addresses stacked coverage. Rather, "[s]tacking is a judicially-created doctrine." *Montano*, 92 P.3d at 1260.[8] This doctrine does not require insurers to provide stacking. *See id.* (declining to find "anti-stacking provisions void as against public policy"). Instead, the New Mexico Supreme Court "treat[s] stacked coverage as extra coverage for which the parties have contracted." *Id.* (quotation omitted). If an insurer fails to obtain a valid rejection of stacked coverage that has been offered, "the insured is entitled [to stacking] by default." *See id.* (quotation omitted).

In *Montano v. Allstate Indemnity Co.*, 92 P.3d 1255 (N.M. 2004), the policy offered stacking limited to two vehicles, but the insured purchased liability coverage on four vehicles. *See id.* at 1256-57. The insured claimed he was entitled to stack his coverage across all four. *See id.* at 1256. Further, he argued the court should declare "all anti-stacking clauses . . . void as against New Mexico's public policy." *Id.* at 1257. The court declined to do so, *see id.* at 1256, and clarified what an insurer that has offered stacked UM/UIM coverage must do to avoid providing it, *see id.* at 1260. The court read New Mexico's UM/UIM statute to "suggest that insurance companies obtain the written rejection of each stacked coverage from [their] insureds in order to limit that coverage," and thus held that "an insurance company should obtain written rejections of stacking in

---

[8] The New Mexico Legislature has not disapproved of stacking, however. *Montano v. Allstate Indem. Co.*, 92 P.3d 1255, 1260 (N.M. 2004).

11

order to limit its liability based on an anti-stacking provision." *Id.* This requirement "effectuate[s] the two functions of [New Mexico's] stacking jurisprudence: fulfilling the reasonable expectations of the insured and ensuring that the insured receive what he or she pays for." *Id.* at 1261.

The *Montano* court also provided an example of what a valid stacking rejection might look like:

> As an illustration of our holding, in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium charge for each of the three UM coverages and allow the insured to reject, in writing, all or some of the offered coverages. Thus, hypothetically, in the case of a $25,000 policy, if the premium for one UM coverage is $65, two coverages is an additional $60, and three coverages $57 more, the insured who paid all three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury coverage. However, the insured may reject, in writing, the third available coverage and pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject all three UM coverages. In any event, the coverage would not depend on which vehicle, if any, was occupied at the time of the injury. Thus, the insured's expectations will be clear, and an insured will only receive what he or she has paid for.

*Id.* at 1260-61.

Citing to this illustration, *Jordan* said "*Montano* . . . require[s] insurance carriers to provide insureds with the premium costs for each available level of stacked coverage." 245 P.3d at 1221; *see also Whelan v. State Farm Mut. Auto. Ins. Co.*, 329 P.3d 646, 653 (N.M. 2014) (summarizing *Montano* as requiring "that insurers disclose the premium

12

costs for each available level of stacked coverage as a means of guaranteeing that consumers can knowingly exercise their statutory rights to UM/UIM coverage").

In sum, *Montano* holds that when an insurer has offered stacking of UM/UIM coverage, it can avoid providing it by (1) stating the premium costs for the offered coverage and (2) obtaining a written rejection from the insured.

4. **Later Stacking Cases**

Since *Montano*, New Mexico and federal courts have attempted to apply its holding about rejection of stacked coverage. Some of these cases speak to the question before us—whether an insurer must offer every possible combination of stacking for a rejection to be valid.

In *Arias v. Phoenix Indemnity Insurance Co.*, --- P.3d ----, 2013 WL 12439297 (N.M. Ct. App. 2013), the plaintiff insured two vehicles and "rejected UM/UIM coverage." *See id.* at *1. The New Mexico Court of Appeals found the insured's rejection invalid and reformed her policy to provide UM/UIM coverage. *See id.* It also decided the reformed coverage limit should stack across the two insured vehicles, *see id.* at *4, noting "*Montano*'s strong dicta indicating a preference for policies to treat vehicles individually and, hence, requiring a policyholder's specific rejection of stacked coverage for each and every vehicle owned before stacking is validly rejected," *id.* at *3. The court explained, "[A]bsent the execution of a sufficient rejection of each and every possible combination of stacking, stacking is something 'to which the insured is entitled by default.'" *Id.* (quoting *Montano*, 92 P.3d at 1260). Thus, "*Montano* demonstrates that,

13

when invalid rejection of stacking exists, our courts favor and extend stacking to all vehicles covered by the policy." *Id.* The court "h[e]ld that, as much as coverage itself to the maximum limit of liability must be read into [the plaintiff's] policy, stacking of coverage for each of the two vehicles thus insured must now follow suit absent valid rejection." *Id.* at *4.

In *Jaramillo v. Government Employees Insurance Co.*, 573 F. App'x 733 (10th Cir. 2014) (unpublished),[9] we addressed whether New Mexico law requires insurers to explain stacking to insureds. *See id.* at 739. We noted that "the *Jordan* court was silent on the issue of stacking, and it did not clearly tie stacking to its new UM/UIM coverage-rejection standard." *Id.* at 744. We concluded "neither *Jordan* nor *Montano* expressly requires the kind of 'discussion of stacking'—*viz.,* a totaling of the premium cost for all vehicles and the provision of the associated amount of stacked coverage at each level of coverage—that the [plaintiffs] suggest must be on a valid Option Form (and waiver of UM/UIM coverage)." *Id.* at 749.

In *Government Employees Insurance Co. v. Shroyer*, No. 1:15-cv-00306 PJK/SCY, 2015 WL 12669885 (D.N.M. Dec. 1, 2015), the U.S. District Court for the District of New Mexico addressed a selection form that offered UM/UIM coverage on only an "'all cars' or 'no cars' basis." *See id.* at *1-3. The insured argued that because

---

[9] Although not precedential, we find the reasoning of unpublished opinions cited in this order and judgment instructive. *See* 10th Cir. R. 32.1 ("Unpublished decisions are not precedential, but may be cited for their persuasive value."); *see also* Fed. R. App. P. 32.1.

the form did not allow selection of "coverage on each car individually," it was invalid.

*See id.* at *3. She thus asked the court to reform the policy to provide the maximum amount of stacked coverage. *See id.* at *1. The court observed that the insured's argument for per-vehicle offerings, "[t]aken to its logical end, . . . would require an infinite number of choices, an approach that is unworkable." *See id.* at *4. Looking to *Montano* and *Jordan*, it determined "[t]here simply is no requirement that an insurer make available, let alone disclose, every permutation [of coverage] regardless of whether it is offered as an option." *See id.*; *see also Allstate Fire & Cas. Ins. Co. v. Trissell*, No. 1:17-cv-00362 PJK/GBW, 2017 WL 6028515, at *4 (D.N.M. Dec. 5, 2017) ("There is no requirement that an insurer offer [stacked] UM/UIM coverage on a per-vehicle basis in a multi-vehicle policy, nor is there a requirement that an insurer provide premium amounts for options not available.").

In *Ullman v. Safeway Insurance Co.*, 404 P.3d 434 (N.M. Ct. App. 2017), *cert. granted*, No. S-1-SC-36580 (N.M. Aug. 24, 2017), the New Mexico Court of Appeals addressed an insurer's duty to explain stacking to customers. *See id.* at 439-40, 444-47. The court, adopting *Jaramillo*'s analysis of *Montano* and *Jordan*, found an insurer need not present to an insured its UM/UIM coverage level if stacked. *See id.* at 446-47. It generally held "an insurer has no duty to offer or explain stacking." *Id.* at 440.

Finally, in *Lueras v. GEICO General Insurance Co.*, 424 P.3d 665 (N.M. Ct. App. 2018), *cert. granted*, Nos. S-1-SC-37135, S-1-SC-37137 (N.M. Aug. 16, 2018), the New Mexico Court of Appeals addressed the same questions presented in *Ullman*, *see id.*

15

*a*t 666, and also whether an insurer may require insureds either to "purchase the same level of UM/UIM insurance on each of their vehicles, or reject UM/UIM coverage on all vehicles," *id.* at 668-69. First, relying on *Ullman*, the court rejected the claim that an insurer's "not explain[ing] that UM/UIM benefits would be stacked"—and thus not stating "the amount of UM/UIM coverage . . . actually available"—violated *Jordan*. *See id.* at 668. Second, the court held that New Mexico law does not "impose . . . a requirement" that "automobile insurers . . . offer policyholders UM/UIM coverage on a per-vehicle basis." *Id.* at 670. Thus, "New Mexico law does not preclude an insurer from requiring an insured to choose the same UM/UIM coverage (or to reject UM/UIM coverage entirely) for all vehicles covered by a single policy." *Id.* at 666-67.

## B. *Analysis*

In our view, New Mexico law does not require an insurer to offer every combination of UM/UIM coverage stacking for an insured's rejection of stacked coverage to be valid. First, the New Mexico Supreme Court has not addressed the question before us, and its cases do not imply such a requirement. Second, the relevant case law suggests New Mexico law does not require an insurer to offer every combination of stacking. Third, New Mexico public policy does not call for this requirement.

### 1. **New Mexico Supreme Court**

The New Mexico Supreme Court did not address in *Jordan* or *Montano* whether insurers must offer every combination of stacked UM/UIM coverage. In *Jordan*, it

identified the steps an insurer must take to obtain a valid rejection of base UM/UIM coverage, not stacking. *See* 245 P.3d at 1221; *see also Jaramillo*, 573 F. App'x at 744 ("[E]xcept for the general reference to *Montano*, the *Jordan* court was silent on the issue of stacking, and it did not clearly tie stacking to its new UM/UIM coverage-rejection standard."); *Ullman*, 404 P.3d at 447 ("As in *Jaramillo*, we will not graft stacking onto our view of *Jordan*.").

In *Montano*, the court addressed stacking, but narrowly "h[e]ld that insurance companies must obtain written rejections of stacking in order to limit their liability." 92 P.3d at 1256. As the policy before us shows, requiring insurers to receive a rejection of stacking before limiting coverage is not the same as requiring insurers to *offer and receive rejections of* every possible combination of stacking before limiting coverage. *See Lueras*, 424 P.3d at 670 ("We conclude that [*Montano*] did not consider whether automobile insurers should be required to offer policyholders UM/UIM coverage on a per-vehicle basis, much less impose such a requirement."). Rather, *Montano* holds that insurers must obtain rejections "of the *offered* coverages," *Montano*, 92 P.3d at 1261 (emphasis added), which is what happened with Mr. Hawley. Post-*Montano* decisions correspondingly refer to the "*available* level[s] of stacked coverage." *See Jordan*, 245 P.3d at 1221 (emphasis added); *see also Whelan*, 329 P.3d at 653.

The *Montano* court gave an "illustration of [its] holding" in which an insurer offered per-vehicle stacking. *See* 92 P.3d at 1260-61. But an illustration is an example, not a holding. *See Lueras*, 424 P.3d at 670 (identifying no authority "[o]ther than the

17

illustration in [*Montano*]" for the "contention that [an insurer] must offer UM/UIM coverage on a per-vehicle basis," and thus rejecting it). Nothing in the illustration requires an insurer to offer every combination of stacked coverage. *See id.* (stating that "[b]y its own terms, [*Montano*'s] 'illustration' does not describe a mandatory requirement imposed on all insurers offering UM/UIM coverage"). Rather, the illustration shows how an insurer could receive a valid stacking rejection *if* it offered stacking in this fashion. *See Trissell*, 2017 WL 6028515, at *4 (stating that "[t]he illustration in *Montano* concerns a policy where the insurer offers stacking on a per-vehicle basis (so a written rejection of stacking on each vehicle would be appropriate), but it does not mandate such an offering").

Based on *Jordan* and *Montano*, we have no reason to predict that the New Mexico Supreme Court would require insurers to offer every possible stacking combination before a rejection can be valid, as Mr. Hawley contends. Even if *Jordan*'s requirements to reject base UM/UIM coverage applied to stacking, we find nothing in *Jordan* that would require an insurer to offer and then receive a rejection of every possible combination of stacking, as opposed to a rejection of just the stacking options offered by the insurer. *See Trissell*, 2017 WL 6028515, at *4 (stating that the requirements of "premium disclosure and rejection are designed for available options, not every permutation imaginable").

18

## 2. **Relevant Case Law from Other Courts**

The foregoing analysis of New Mexico Supreme Court decisions accords with decisions from other courts. In *Shroyer* and *Trissell*, the U.S. District Court for the District of New Mexico addressed similar questions and concluded New Mexico insurers need not offer every combination of UM/UIM coverage or stacking. *See* 2015 WL 12669885, at \*3-5; 2017 WL 6028515, at \*3-4. In *Lueras*, the New Mexico Court of Appeals likewise rejected a requirement for per-vehicle UM/UIM coverage offerings. *See* 424 P.3d at 666-70. And in *Ullman*, the New Mexico Court of Appeals stated that an insurer need not "offer or explain stacking to a customer," 404 P.3d at 440—which also would necessarily preclude a requirement to offer or explain per-vehicle stacking. Similarly, we concluded in *Jaramillo* that neither *Jordan* nor *Montano* requires a "discussion of stacking" for "available levels" of coverage, *see* 573 F. App'x at 744-49, much less unavailable ones.[10]

Mr. Hawley's reliance on *Arias* is factually inapposite. First, in *Arias* the insured rejected base UM/UIM coverage. *See* 2013 WL 12439297, at \*1. Here, Mr. Hawley

---

[10] Mr. Hawley correctly observes the district court improperly stated it was "bound" by *Jaramillo*. *See* App. at 145. Typically, "when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (quotation omitted). *Jaramillo* is an unpublished opinion. And while unpublished opinions may have "persuasive value," they "are not binding precedent." *United States v. Austin*, 426 F.3d 1266, 1274 (10th Cir. 2005); *see also* 10th Cir. R. 32.1(A). As our analysis reveals, despite this inaccurate statement by the district court, its ultimate conclusion of law proved accurate.

19

selected base UM/UIM coverage and rejected stacked coverage.  Second, in *Arias*, the court held the plaintiff's rejection of UM/UIM coverage was invalid, and it reformed the policy to provide base coverage.  *See id.*  Here, the policy already included base UM/UIM coverage.  Third, *Arias* addressed what stacking options should be available when the court has reformed the policy to add base UM/UIM coverage.  *See id.* at *3-4.  Here, Mr. Hawley's policy already included base UM/UIM and stacking options without reformation of the policy.  *See Jaramillo*, 573 F. App'x at 746 ("[S]tacking in the situation contemplated by *Arias* follows *only after* the court finds an invalid rejection of UM/UIM coverage and reads that coverage into a policy.").  Fourth, the *Arias* policy covered only two vehicles, so the only stacking possibility was to double the UM/UIM coverage limit over two vehicles.  *See* 2013 WL 12439297, at *1.  Here, Mr. Hawley could choose to stack his UM/UIM coverage over six vehicles.  He argues he should have had other options, but Farm Bureau gave him at least as many options as the court created in *Arias*.  The stark differences between *Arias* and this case render the *Arias* dicta (in turn based on *Montano* dicta) on per-vehicle stacking coverage unpersuasive here.

3. **Public Policy**

New Mexico recognizes a "public policy in support of stacking."  *Montano*, 92 P.3d at 1259.  But this policy does not help Mr. Hawley here.  It has two goals: "fulfilling the reasonable expectations of the insured and ensuring that the insured receive

20

what he or she pays for." *Id.* at 1261. Mr. Hawley received the coverage that he requested and for which he paid.[11]

The *Montano* court recognized that stacking coverage across all vehicles only could reduce consumers' "freedom to decide how much coverage they can afford." *See id.* at 1259. But this preference for consumer choice does not require every conceivable choice. Indeed, the law does not even require an insurer to offer every possible level of UM/UIM coverage, and does not require an insurer to offer stacked coverage at all. *See Jordan*, 245 P.3d at 1221 (explaining that the "menu of coverage options and corresponding premium costs" an insurer must provide includes rejection of UM/UIM coverage, coverage in "the minimum amount . . . allowed by [statute]," coverage in the "amount equal to the policy's liability limits," and "any other levels of UM/UIM coverage offered to the insured").

Farm Bureau offered Mr. Hawley three base levels of UM/UIM coverage: (1) $25,000; (2) $50,000; or (3) $100,000. It further offered him the choice of not stacking his chosen base coverage or of stacking it across his six vehicles. As a result, Mr. Hawley could pick (1) $25,000 non-stacked; (2) $50,000 non-stacked; (3) $100,000

---

[11] In his reply brief, Mr. Hawley notes that *Montano* states as a matter of public policy that "it is unfair not to allow stacking when multiple premiums are paid," Aplt. Reply Br. at 6 (quoting *Montano*, 92 P.3d at 1259 (emphasis omitted)), and argues he "paid separate UM/UIM premiums for each of his . . . covered vehicles," *id.* By raising this argument only in his reply brief, Mr. Hawley waived it. *See United States v. Pickel*, 863 F.3d 1240, 1259 (10th Cir. 2017) (stating that an appellant "waived" an argument made "for the first time in his reply brief"). We thus do not address it.

non-stacked; (4) $25,000 stacked (equal to $150,000 of coverage); (5) $50,000 stacked (equal to $300,000 of coverage); or (6) $100,000 stacked (equal to $600,000 of coverage). Or he could (7) reject UM/UIM coverage entirely. Mr. Hawley argues these seven options did not provide him with adequate choice. He contends the only way Farm Bureau could have offered a sufficient range of choice was by providing every combination of stacking for every vehicle, potentially necessitating a vastly expanded number of options. The New Mexico Supreme Court has not indicated it would require an insurer to do so.

* * * *

We do not read New Mexico law to require an insurer to offer every possible combination of UM/UIM stacking to obtain a valid rejection. Farm Bureau therefore received a valid rejection of stacking from Mr. Hawley. He was not entitled to stack his UM/UIM coverage.

## III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

22